[Crim. No. 7621.  First Dist., Div. One.  Feb. 16, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM HENRY BROWN, Defendant and Appellant.

COUNSEL

Robert W. Merson, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Gary Garfinkle, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**ELKINGTON, J.**—Defendant William H. Brown appeals from a judgment of conviction of first degree robbery (Pen. Code, § 211) based upon a jury verdict.

Two police officers were driving past a service station on the corner of 14th Avenue and East 14th Street in Oakland, around 1 o'clock in the morning. They "saw a man walk up from East 14th Street into the station, inside of the pumps, along the building line, and into the office of the station." They observed the attendant walk to the money box and then saw something change hands from the attendant. With their car's lights out the officers pulled into the station, got out, and approached the office door from two directions. One of the officers asked the attendant if everything was all right. He did not reply, but the other man who was defendant Brown said, "Everything is fine, Officer." Drawing his gun the officer ordered Brown to raise his hands, whereupon the attendant said, "He has a gun." From Brown's pockets the officer took a fully loaded .22 calibre revolver and $24 in currency.

The service station attendant testified that Brown came into the station's office, pulled out a revolver and said, "Let me have all the money and I won't hurt you." The attendant handed Brown $24 in currency. He was in the process of reaching for more money to hand over when he saw a police officer walking toward him. About that instant Brown put the gun in his pocket. When the officer asked, "Is everything all right?" the attendant "froze." After being arrested and disarmed Brown said "I just wanted to borrow the money" and "mumbled something about having to get to the hospital." He said his name was Brown and that he lived in West Oakland; he said he was walking home.

Other officers soon arrived at the scene. A policeman properly advised Brown of his *Miranda* rights (see *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]), which he said he understood. He was asked, "Having these rights in mind do you wish to talk to us now?" The answer was "No, I haven't anything to say." Other officers were later told that Brown had been given the *Miranda* admonition.

Suspecting that Brown had come to the scene of the robbery by automobile, one of the officers walked down East 14th Street in the direction from which Brown had entered the station. He saw but one car on the street. He found its doors unlocked, the keys in the ignition lock, and the hood of the car still warm. No registration certificate could be seen, so the officer opened the glove compartment, "Primarily for the ownership of the car, the registration, who might own it." In the glove compartment were found live .22 calibre bullets and an "employment book" with Brown's name on it. More such bullets were then found in a jacket.

Brown took the stand at his trial. He testified to the following: He first said he was trying to sell the gun; then that he was seeking to borrow money on it. He said, "I had taken the gun out of my pocket and I asked him, I said

'Let me have $30 on this' just like that. . . . I said, I just want to cooperate with you; I am not going to hurt you." As the attendant was counting out the money he saw the police come up so he put the gun in his pocket. The automobile, a rental car rented to his girl friend, had been driven by him. The gun belonged to the girl friend; he knew where she kept it and he took it without her knowledge. It was unloaded when he took it; he loaded it later. He did not know how the .22 calibre bullets got into the glove compartment of the car. He lived in Berkeley, a few blocks distant from his girl friend.

■ Brown contends that the police search of the automobile was violative of Fourth and Fourteenth Amendment standards. We find no merit in the contention.

Under the circumstances the police had reason to suspect that Brown had an automobile despite his declaration to the contrary. He lived in Berkeley, or West Oakland, each several miles away. His statement that he was walking home at one o'clock in the morning as he passed the service station was implausible. If he did have a car it would probably be in the area from which he was seen entering the station. Looking in that direction the police saw but one automobile. The car's warm hood suggested it had recently been driven, and the key in its ignition would enable a quicker getaway. This enhanced the probability that the car was Brown's. There was thus reasonable cause to believe that the vehicle itself was an instrumentality of Brown's crime, a getaway car, and that evidence pertaining to the robbery might be found therein.

The United States Supreme Court has recently said: "Automobiles, because of their mobility, may be searched without a warrant upon facts not justifying a warrantless search of a residence or office. [Citations.] The cases so holding have, however, always insisted that the officers conducting the search have 'reasonable or probable cause' to believe that they will find the instrumentality of a crime or evidence pertaining to a crime before they begin their warrantless search." (*Dyke* v. *Taylor Implement Co.,* 391 U.S. 216, 221 [20 L.Ed.2d 538, 543, 88 S.Ct. 1472].) Such a search is not limited to the need to discover hidden weapons, or to prevent destruction of evidence. (*People* v. *Webb,* 66 Cal.2d 107, 118 [56 Cal.Rptr. 902, 424 P.2d 342, 19 A.L.R.3d 708].) ■ And, "a defendant's absence from the scene does not of itself render illegal a search which, in view of the totality of surrounding circumstances, is reasonable." (*People* v. *Williams,* 67 Cal.2d 226, 229 [60 Cal.Rptr. 472, 430 P.2d 30].) ■ This rule was restated in *People* v. *Superior Court,* 264 Cal.App.2d 794, 797 [70 Cal.Rptr. 795], as: "[W]hen the officers have reliable information strongly indicating the use of an automobile in the commission of a crime or in the

escape of the offender, they may properly search that car even though it is unoccupied when found."

Furthermore, officers finding an unlocked car with its ignition key in place, are reasonably permitted to investigate its ownership. Its registration certificate might lead to a disclosure that the vehicle was stolen; in any event it would enable the officers to advise the owner that the key was left in the vehicle thus decreasing the likelihood of its later theft. Vehicle Code section 2805 provides: "A member of the California Highway Patrol may inspect any vehicle of a type required to be registered under this code on a highway . . . for the purpose of . . . investigating the title and registration thereof." Section 2805 applies also to peace officers generally. (See *People v. Grubb,* 63 Cal.2d 614, 618 [47 Cal.Rptr. 772, 408 P.2d 100]; *People v. Hunter,* 1 Cal.App.3d 461, 464 [81 Cal.Rptr. 750]; *People v. Monreal,* 264 Cal.App.2d 263, 265 [70 Cal.Rptr. 256].)

We see no merit whatever in Brown's insistence of error (1) "because the superior court failed to appoint counsel to represent the appellant and to be personally responsible for the preparation and trial of this case," and (2) because appointed trial counsel did not move after Brown's conviction for his temporary placement at a diagnostic facility as permitted by Penal Code section 1203.03. Brown was ably represented at his trial by the Alameda County Public Defender's office. The constitutional standards of representation set out in *People v. Ibarra,* 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487], were clearly met.

Brown's remaining assignment of error, that certain statements placed in evidence were obtained from him in violation of *Miranda v. Arizona, supra,* 384 U.S. 436, seems well taken.

On direct examination, as we have indicated, Brown first testified that he was trying to *sell* the revolver, and later that he was trying to *borrow* money on its security. On cross-examination the People were allowed to produce two statements made by him to the police. The first statement was harmless; it also referred to Brown's intended sale *and* hypothecation of the weapon. The second, however, "I work at night and that is the only reason I had the gun in my pocket," tended to discredit Brown's trial explanation of the gun.

It will be recalled that when Brown was told of his *Miranda* rights and asked if he wished to talk to the police he answered, "No, I haven't anything to say." The questioned statements were made in response to later police questioning. No showing was made by the People that Brown himself had initiated the subsequent interrogation. *Miranda* tells us that once an accused indicates "that he wishes to remain silent, *the interrogation must*

*cease.*" (*Miranda* v. *Arizona, supra,* 384 U.S. 436, 473-474 [16 L.Ed.2d 694, 722-723, 86 S.Ct. 1602, 10 A.L.R.3d 974]; see also *People* v. *Fioritto,* 68 Cal.2d 714, 718-720 [68 Cal.Rptr. 817, 441 P.2d 625].)  ▮  The questioning of Brown after his declination to talk was therefore error.

We observe, however, that we are concerned with an *admission* of Brown which in no way tends to confess guilt.  ▮  Although a *confession* taken in violation of *Miranda* is prejudicial per se and requires reversal, the erroneous introduction of an *admission* may be considered in the light of the harmless error test of *Chapman* v. *California,* 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065]. (*People* v. *Fioritto, supra,* 68 Cal.2d 714, 720.)  ▮  Applying that test, because of the conclusive evidence of Brown's guilt, we are impelled to declare a belief that the erroneous introduction of his admission was harmless beyond a reasonable doubt.

The judgment is affirmed.

Molinari, P. J., and Sims, J., concurred.

A petition for a rehearing was denied March 16, 1970, and appellant's petition for a hearing by the Supreme Court was denied April 15, 1970.