Tommy Russell BOATRIGHT, Appellant,

v.

The STATE of Texas, Appellee.

No. 44090.

Court of Criminal Appeals of Texas.

Oct. 20, 1971.

Rehearing Denied Nov. 30, 1971.

Melvyn Carson Bruder, Dallas (By Court Appointment), for appellant.

Henry Wade, Dist. Atty., John B. Tolle, Harry J. Schulz, Jr., W. T. Westmoreland, Jr., and Edgar A. Mason, Asst. Dist. Attys., Dallas, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for the possession of demerol, a narcotic drug. The jury assessed the punishment at sixty years.

The main contentions of the appellant, among many others, concern his arrest and the search of the automobile that he had been driving.

We affirm.

Patrick Cumming testified that he met the appellant on August 15, 1969, and knew him only as Tommy and that they ran around together all night and until the next day. Cumming then testified that he drove his mother's bright red Chevrolet to a pharmacy and attempted to pass a forged prescription where he was apprehended. He saw Tommy, the appellant, driving the car away. He later told Tommy who came to visit him in jail to take the car to his mother.

Investigator De Hoyas of the Dallas Police Department testified that at approximately mid-morning on August 22, 1969, he received a telephone call from a woman that her automobile had been stolen by a passenger after her son had gone into a drugstore to pass a forged prescription and had been apprehended. She described the automobile as a small bright red Chevrolet bearing Arizona license plates. In mid-afternoon De Hoyas and his partner, Officer Ball, saw the automobile that had been reported stolen on a street in Dallas. They turned their patrol car around. The appellant was getting out of the car and one of his companions, Leonard Victor Wall, ran when he saw the officers. Wall, a girl passenger and the appellant were apprehended. De Hoyas saw an unlatched ladies overnight case in the back seat. The case contained 116.2 milligrams of demerol hydrochloride according to the testimony of Dr. Mason, a toxicologist.

Officer De Hoyas also found tuinal, desoxyn, dexamyl, eskatrol, liquid methadrine, liquid nembutal and liquid novocain in the case. A total of 1500 capsules, spansules and tablets of dangerous drugs and narcotics was taken from the car along with needles, plastic syringes and other narcotic paraphernalia.

An undercover agent of the Texas Department of Public Safety testified that he purchased demerol and amphetamines from the appellant the morning before he was arrested and that at that time the appellant had in his hand the overnight case which contained the exhibits that had been introduced into evidence.

At the penalty stage of the trial the State proved and the appellant admitted that he had been placed on probation for burglary in Gregg County and had been convicted for the misdemeanor offense of defrauding with a worthless check and driving while license suspended, both in 1969; and for misdemeanor theft in 1968.

■ It is contended that the arrest and the search were illegal. He urges that no probable cause existed for the arrest without a warrant. When the arrest was made, De Hoyas asked permission to search the car. The appellant, who was the driver, replied, "It's not my car. Do whatever you want." This appears to be sufficient consent for the search of the car without a warrant.

We will discuss the arrest and search as if no consent were given.

■ Officer De Hoyas testified that he received a telephone call from a woman who described her car and reported that it had been stolen. He also testified that he only knew the first name, Tommy, of the person who had taken the car. He also

testified that he saw the car that had been reported stolen, then one of its occupants fled and the appellant was getting out of the car apparently nervous and ready to flee.

Article 18.22, Vernon's Ann.C.C.P., preventing consequences of theft, provides:

"All persons have a right to prevent the consequences of theft by seizing any personal property which has been stolen, and bringing it, with the supposed offender, if he can be taken, before a magistrate for examination, or delivering the same to a peace officer for that purpose. To justify such seizure, there must, however, be reasonable ground to suppose the property to be stolen, and the seizure must be openly made and the proceedings had without delay."

Under Officer De Hoyas' testimony there was sufficient evidence to conclude that the car was stolen and he had a right to take the car to prevent the consequences of theft. After seeing that appellant was driving the car that had been reported stolen, he had the right to take it and the duty to arrest him. Anderson v. State, Tex.Cr.App., 454 S.W.2d 740. See Ferrell v. State, Tex.Cr.App., 397 S.W.2d 86.

■ The contention of appellant that the officer did not have enough reliable information to make the arrest is overruled. It would be unreasonable to require officers who receive a sufficient description of a stolen car to check the veracity of the owner before seizing it especially where the name of the suspected thief is not known. This is somewhat different from the situation where a suspect has been named and there is sufficient time to obtain a warrant for his arrest.

■ The appellant also contends that the officer violated his Fourth Amendment rights by conducting a warrantless search of the stolen automobile. Even if no consent had been given, we still hold the search to have been legal. Recently, the Supreme Court stated:

"[A]utomobiles and other conveyances may be searched without a warrant in circumstances that would not justify the search without a warrant of a house or an office, provided there is probable cause to believe that the car contains articles that the officers are entitled to seize. * * * But the circumstances that furnish probable cause to search a particular auto for particular articles are most often unforeseeable; moreover, the opportunity to search is fleeting since a car is readily moveable. Where this is true * * * if an effective search is to be made at any time, either the search must be made immediately without a warrant or the car itself must be seized and held without a warrant for whatever period is necessary to obtain a warrant for the search." Chambers v. Maroney, 399 U.S. 42, 48, 50–51, 90 S.Ct. 1975, 1979, 1981, 26 L.Ed.2d 419 (1970).

A situation similar to ours arose in State v. Kelley, 107 Ariz. 8, 480 P.2d 658 (1971). There the issue was whether an officer who had probable cause to believe a car was stolen could search the vehicle after he had taken the defendant into custody. The Arizona Supreme Court held that the search of the car with a seizure of marihuana found under the seat was valid. Also, in United States v. Golembiewski, 437 F.2d 1212 (8th Cir. 1971), it was held that "the officers had reasonable cause to believe the car was stolen and hence to seize and hold the car and make the search that was made." Id., at 1214.

We hold that where the officer had probable cause to believe the car was stolen and both the driver and the car were in the custody of the officer an immediate warrantless search of that car is legal.

Further, the officer was required to hold the car which had been reported stolen subject to the order of the proper court. Article 47.01, V.A.C.C.P. In Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L. Ed.2d 730 (1967), officers seized petition-

er's car because they were required to do so by state law. There the Supreme Court stated:

"It would be unreasonable to hold that the police, having to retain the car in their custody for such a length of time, had no right, even for their own protection, to search it. It is no answer to say that the police could have obtained a search warrant, for 'the relevant test is not whether it is unreasonable to procure a search warrant, but whether the search was reasonable.'" 386 U.S., at 61–62, 87 S.Ct., at 791.

In Cooper, supra, the search occurred a week after the arrest. In our case the search occurred incident to the arrest itself.

■ Next, it is contended that the court erred in refusing to shuffle the names of all of the prospective jurors selected for all of the courts of the county for the week instead of the jury panel selected for the court in which he was tried. In many cases this would be an impossibility because many of the jurors for the week could have been and were probably selected for duty in other courts. We overrule this contention as we did in Gonzalez v. State, Tex.Cr.App., 468 S.W.2d 85.

In Curry v. State, 157 Tex.Cr.R. 237, 248 S.W.2d 166, this Court said:

"* * * [i]n those counties operating under the jury wheel, the term, 'available for service as jurors', as used in Art. 626, C.C.P., refers to those veniremen sent over from the central jury room for service in a given case. It follows that the trial court was not here required to have the thirty-two veniremen drawn from the entire central jury panel, and his action in refusing such request was not error."

■ Appellant contends that an unresponsive answer was given by Officer De Hoyas when he was being questioned by counsel for defense during a voir dire examination before the jury.

The court asked appellant's counsel if he wanted to question the witness on the validity of the arrest outside the presence of the jury. Counsel chose to question him in front of the jury. The question and answer are as follows:

"Officer, what was the factual basis of your making the arrest for auto theft? What knowledge?

"An auto theft detective called me up there and told me that this particular car that I was looking for was * * * they were fixing to make an auto theft beef on it and a dope dealer was supposed to be driving the car. If those words—?"

An objection that the answer was unresponsive was sustained. The jury was instructed not to consider it. A motion for mistrial was overruled.

It appears that when appellant's counsel asked what knowledge he had and why he was making the arrest for auto theft, the officer answered the question by telling him what knowledge he had about the car and the driver. The asking "what knowledge" the officer had was somewhat like asking a "why" question, where one can expect a broad answer. See Mahaffey v. State, Tex.Cr.App., 471 S.W.2d 801.

■ Next, complaint is made because the court admitted the statement of the appellant after he was under arrest that the car was not his.

De Hoyas testified that Wall had run and that appellant appeared to be nervous and wanted to get away from the car. De Hoyas was then asked what were the full contents of appellant's statement. Appellant's counsel objected that he had not been given the Miranda warning. This was overruled. De Hoyas then testified that "[H]e said it wasn't his car. Said it belonged to a friend of his," and that he kept repeating it wasn't his car.

This statement appears to have been made at the time of arrest when the appel-

lant was nervous. It appears to have been res gestae of the arrest. Article 38.22, Section 1(f), V.A.C.C.P., provides in substance that statements made as a part of the res gestae of the arrest are not inadmissible. See Jones v. State, Tex.Cr.App., 458 S.W.2d 654.

It is contended that reversible error was committed when evidence was admitted that three other people came up to the car and were then arrested. The record does not show if they attempted to aid the appellant or why they were arrested.

Generally the State may prove the circumstances surrounding the arrest of an accused. See Lenzi v. State, Tex.Cr.App., 456 S.W.2d 99.

No error has been shown.

Complaint is also made because the court permitted Officer De Hoyas to identify and to testify about the characteristics of some of the drugs that were taken from the car. He was shown to have had four years experience as a narcotics officer. In the event this was error, it was made harmless when Dr. Mason, a qualified toxicologist, testified to substantially the same facts.

Appellant also complains that the court erred in permitting Dr. Mason to testify concerning the chemical analysis of the drugs which were introduced into evidence, because he was not present when the tests were made. He contends that this amounted to hearsay and denied him confrontation of witnesses.

Dr. Mason testified that the tests were made under his control and supervision.

In a similar case this Court held that Dr. Mason could testify about the results of tests made under his supervision. Green v. State, Tex.Cr.App., 451 S.W.2d 893. See Preston v. State, Tex.Cr.App., 450 S.W.2d 643.

No error is shown.

Complaint is made that the trial court erred in permitting the State to reopen after the appellant had made a motion for an instructed verdict.

The State, with permission of the court, reopened and called the witness, Joe Hicks, who testified among other things that he saw the overnight case in appellant's possession the day of the arrest.

Article 36.02, V.A.C.C.P., provides:

"The court shall allow testimony to be introduced at any time before the argument of a cause is concluded, if it appears that it is necessary to a due administration of justice."

An abuse of discretion must be shown to obtain a reversal. Perry v. State, Tex.Cr. App., 464 S.W.2d 660; Parks v. State, Tex.Cr.App., 437 S.W.2d 554; Riley v. State, Tex.Cr.App., 399 S.W.2d 805. None has been shown.

Complaint is also made that it was error to permit Hicks to testify about seeing the overnight case in appellant's possession and purchasing narcotics sometime in the morning of the day of the arrest. The only objection was to the State's reopening. No objection was raised concerning an extraneous offense which is now urged on appeal. The matter is not properly before us for review.

Some twenty-two grounds of error concerning the argument are presented. To set them out would only lengthen this opinion and add nothing to the jurisprudence of this State. Each has been reviewed and none presents reversible error.

The judgment is affirmed.