Robert Richard **HENSLEY**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 45559.

Court'of Criminal Appeals of Texas.

March 14, 1973.

Rehearing Denied June 13, 1973.

Irving L. Bates, Houston, for appellant.

Carol S. Vance, Dist. Atty., Alvin A. Horne, Asst. Dist. Atty., Houston, and Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

MORRISON, Judge.

The offense is robbery by assault with a prior conviction for an offense of the same nature alleged for enhancement; the punishment, life.

The sufficiency of the evidence to sustain the conviction is not challenged. The robbery charged occurred at a different U Totem store sometime before his arrest.

Appellant's sole ground of error grows out of an allegedly illegal search of his person and of his automobile at the time of his arrest.

Prior to trial appellant made a motion to suppress the evidence secured as the result of the search of his person and his auto-

mobile. After the hearing, the motion was overruled. See Powers and Dion v. State, Tex.Cr.App., 456 S.W.2d 97.

■ Concerning the arrest the witness Gilpin, a supervisor of U Totem stores in Houston and a reserve Deputy Sheriff, testified that on the night of appellant's arrest he was cruising in the neighborhood of a U Totem store located on Braeburn Glenn Drive and observed an automobile parked near a closed service station which had not been there when he passed five minutes earlier. No persons who might have driven the automobile were visible in the area. The key was in the ignition and a check of the hood of the automobile revealed that it was warm. This service station was adjacent to the U Totem store. The hour was 15 minutes before the store was to be closed for the night. The witness was familiar with the fact that several U Totem stores, as well as their competitors, had recently been robbed by a bandit who wore a motorcycle helmet. As Gilpin approached the store he observed appellant standing "between the garbage ben [sic] and the front of the building *on the side*" [Emphasis Supplied] in an area which was not well lit. Appellant was in the act of putting on the motorcycle helmet which he had in his hand. When being questioned about where his motorcycle was, appellant replied that it was broken down at another location. When asked if the automobile parked at the service station was his, appellant replied that it was not. When asked what caused the bulge in his jacket pocket appellant replied that it was a gun. The pistol would appear to have been admissible under Article 487, Vernon's Ann. P.C., and our holding in Cox v. State, Tex. Cr.App., 442 S.W.2d 696.

■ We now discuss the search of the automobile. Gilpin detained appellant until members of the regular Houston police arrived at the scene. It was they who searched the automobile. They found therein, "Several disguises, a ski mask, a wig, a check book with [appellant's] name in it." They also found a money pouch and money bag which, together with the wig, were introduced in evidence. Initially, we observe where, as here, the appellant disclaims ownership of an automobile he forfeits his standing to contest the search thereof. Cf. Boatwright v. State, Tex.Cr. App., 472 S.W.2d 765.

■ Further, we conclude that the officers were in possession of sufficient probable cause to believe that the appellant had driven to the scene of the planned robbery in the automobile and that immediately upon completion of such robbery he planned to use the same to flee the scene.

The facts here are more nearly akin to those before the Court of Appeals in California in People v. Brown, 4 Cal.App.3d 382, 84 Cal.Rptr. 390 (no writ history), than any other case we have been able to find. There the officers apprehended Brown in the actual commission of a robbery. (In the case at bar this appellant was apprehended as he was preparing to rob the U Totem store). We quote from the opinion:

"Suspecting that Brown had come to the scene of the robbery by automobile, one of the officers walked down East 14th Street in the direction from which Brown had entered the station. He saw but one car on the street. He found its doors unlocked, the keys in the ignition lock, and the hood of the car still warm. No registration certificate could be seen, so the officer opened the glove compartment. 'Primarily for the ownership of the car, the registration, who might own it.' In the glove compartment were found live .22 calibre bullets and an 'employment book' with Brown's name on it. More such bullets were then found in a jacket."

Later on in the opinion the Court said:

"Under the circumstances the police had reason to suspect that Brown had an automobile despite his declaration to the contrary. . . . If he did have a car

it would probably be in the area from which he was seen entering the station. *Looking in that direction the police saw but one automobile.* The car's warm hood suggested it had recently been driven, and the key in its ignition would enable a quicker getaway. This enhanced the probability that the car was Brown's. There was thus reasonable cause to believe that the vehicle itself was an instrumentality of Brown's crime, a getaway car, and that evidence pertaining to the robbery might be found therein."

We, therefore, conclude the police were authorized to search the automobile.

■ The sentence reflects a punishment of five years to life. However, since appellant's conviction was enhanced under Article 62, V.A.P.C., a mandatory life sentence must be imposed and the judgment is therefore reformed to so reflect.

Finding no reversible error, the judgment, as reformed, is affirmed.

### DISSENTING IN PART and CONCURRING IN PART

ODOM, Judge (dissenting in part and concurring in part).

I disagree with the majority opinion that the police were authorized to search the automobile in question. The appellant was seen standing near a U Totem Store in Houston some fifteen minutes before the store was to be closed for the night. The officer who observed appellant at that location had previously seen an automobile parked near a closed service station. Appellant was questioned by the officer as to whether the automobile near the service station was his and he replied that it was not. The officer then noticed a bulge in appellant's pocket. Asked what the bulge was, appellant replied that it was a pistol. At this point, the officer was authorized to arrest and search the appellant's person. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; Brown v. State, Tex.Cr. App., 481 S.W.2d 106.[1] See also, Article 14.03, Vernon's Ann.C.C.P. The majority hold that this was sufficient probable cause to then search the automobile near the service station, since the key was in the ignition and a check of the hood of the automobile revealed that it was warm. I disagree.

Assuming, arguendo, that there was probable cause to believe that the automobile belonged to appellant,[2] the state failed to sustain its burden of showing exigent circumstances that would make the procuring of a search warrant impractical. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564; Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L. Ed.2d 419; Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576; Brown v. State, Tex.Cr.App., 481 S.W.2d 106; Stoddard v. State, Tex.Cr.App., 475 S.W. 2d 744.

The majority seems to bottom its opinion on People v. Brown, 4 Cal.App.3d 382, 84 Cal.Rptr. 390, wherein the California court apparently holds that where a robber is caught in the act of a robbery, the search of an automobile in the near vicinity that

1. "Where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and *where nothing in the initial stages of* the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.

2. There was nothing at that time to indicate that the automobile belonged to appellant *other* than the fact that it had recently been parked where it was found and no one was seen in the area.

might reasonably be used as a get-away car is reasonable. In reaching its decision, the court's theory is that if an automobile is an "instrumentality of the crime," such as a get-away car, then it could be seized under the California "plain view" doctrine. In *Brown,* the court relied on People v. Superior Court, County of Contra Costa, 264 Cal.App.2d 794, 70 Cal.Rptr. 795, and quoted therefrom the following:

> "We conclude that when the officers have reliable information strongly indicating the use of an automobile in the commission of a crime or in the escape of the offender, they may properly search that car even though it is unoccupied when found."

However, in People v. Superior Court, County of Contra Costa, supra, there were exigent circumstances which made the procuring of a search warrant impracticable. The police therein arrived at the scene of a burglary, and a witness said the suspect fled on foot but that she thought he was connected with a white Cadillac parked and unoccupied in front of the building. The automobile offered the best clue to the burglar's identity. By looking inside, for the purpose of getting the identity of the owner, the police might catch the burglar. It was only after a thorough discussion of the facts that the court concluded that the entry into the automobile for that purpose was reasonable. The *Brown* decision applies the "instrumentality of the crime" principle to a situation where exigent circumstances do not exist.[3]

Further, the California Court in *Brown* did not rest its holding solely on the "instrumentality of the crime" theory. They buttressed the opinion on the California Vehicle Code, Section 2805, which authorizes a police officer to investigate an abandoned car to determine its ownership. No mention was made of exigent circumstances.

I submit that People v. Brown, supra, is not authoritative and should not be followed.

The effect of the majority opinion in the instant case is to delegate to the officer the sole discretion to determine whether probable cause exists to search an automobile even though there are no exigent circumstances which would make such an intrusion reasonable. Here, as in *Stoddard,* supra, appellant was in the custody of officers and had no opportunity to contact any other person or to get any weapon that may have been in the automobile, or to destroy any evidence therein. The automobile was not moving, and there was no one else in the area to drive it away. There is no reason why the officers might not have left one of their company in charge of the automobile while another went to a magistrate to secure a warrant. While it is true that the Supreme Court has enunciated slightly different rules concerning a search of an automobile without a warrant, the rationale is based upon the fact that "a vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685. In the instant case the search of the automobile cannot be justified upon this reasoning. There is no indication in the record that the car was about to be moved or could be moved. And there is no indication in the record that there was not ample time to secure the necessary warrant for the search of the car, had the officers believed there was probable cause to seek one.

Although I disagree with the majority that the search of the automobile was justified, I concur in the results and will set forth my reasons.

---

3. It should be noted that the California cases cited above and People v. Teale, 70 Cal.2d 497, 75 Cal.Rptr. 172, 450 P.2d 564 (Arguably the origin of the "instrumentality of the crime—plain view" principle in California) were all decided prior to The Supreme Court decision of Coolidge v. New Hampshire, supra, wherein the principle was rejected.

Appellant was charged with robbing Pattrick Henry, the night manager of a U Totem store on January 16, 1970, prior to his arrest and search near another U Totem store on February 27, 1970. The evidence shows that when the offense was committed the robber was wearing faded blue jeans, a green military jacket, low quarter shoes, and a white motorcycle helmet with a black visor, taped in a manner so as to prevent a view of the robber's face. When appellant was arrested he was wearing faded blue jeans, a green military jacket, low quarter shoes and was placing on his head a white motorcycle helmet with a dark, taped visor. A small chrome plated derringer with four barrels was recovered from appellant when he was arrested.

Witness Henry made positive identification of the pistol and the motorcycle helmet and visor. He testified that appellant's height and weight matched that of the robber.

Earl Brewer, who was present during the robbery, also identified the motorcycle helmet and the pistol as being the same as the ones used by the robber.

All of the above items were obtained as the result of the search of appellant's person on the night of the arrest and all were admitted into evidence.

And, even though witness Henry could not see the robber's face, by virtue of the taped visor on the motorcycle helmet, he paid particular attention to the robber's body and legs and testified that appellant's body and legs were exactly like those of the robber.[4]

The fact that both witnesses positively identified the helmet the appellant was wearing and the pistol that was recovered from him on the night of the arrest, as well as Henry's detailed description of appellant's torso, was sufficient to support the verdict.[5]

The fruits of the automobile search that were introduced in evidence consisted of a wig, a money pouch, a money bag, and a pair of gloves.[6] These items, having been introduced in evidence, must have been considered by the jury. But, unless there is a reasonable probability that the improperly admitted evidence contributed to the conviction, reversal is not required. See Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705.

There was no testimony linking the wig to the offense charged or to any other offense. And, although there was testimony that a money pouch, like the one recovered in the automobile search, had been taken in the robbery, neither witness could positively identify it. Not only is the properly admitted evidence of guilt here overwhelming, but it also was in no way dependent upon the evidence received from the automobile search.

From my own reading of the record, I conclude that the minds of an average jury

4. When asked whether he recognized appellant's body, Henry answered:
   "A. When he robbed me, well, UTotem had taught me just from robberies, that if they're going to have their face covered up look at their bodies and see if they're heavy build or their legs are wider than normal, and that's the way I identify him. He had a larger stomach than the normal man, and his legs were a lot wider, fatter, I got an awful good look at his legs. * * * his legs, he had very fat thighs and legs and he had sort of a big stomach, sort of fat, over built, over weight. * * * The face is the only part I am vague on, the rest of the body—

   Q. The physical body description is the same?
   A. Yes, sir, exactly."

5. The jury was charged on circumstantial evidence.

6. There was conflicting testimony as to whether the gloves were found on appellant's person, or recovered from the automobile. Although there was testimony about a ski mask and a checkbook with appellant's name printed on it, neither was admitted into evidence, and there was no testimony linking either to the offense charged.

would not have found the state's case less persuasive had the fruits of the automobile search been excluded. The admission into evidence of these items, therefor, was at most harmless error. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L. Ed.2d 284 (1969).

For the reasons stated, I concur in the affirmance of the conviction.

ROBERTS, J., joins in this opinion.