Robert Michael DARLAND, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 57521, 57522.

Court of Criminal Appeals of Texas,
Panel No. 1.

June 20, 1979.

Philip S. Green, Houston, for appellant.

Carol S. Vance, Dist. Atty., Calvin A. Hartmann, and Frank Harmon, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and ROBERTS and CLINTON, JJ.

## OPINION

CLINTON, Judge.

This is an appeal from two convictions for involuntary manslaughter.[1] The jury assessed appellant's punishment in each case at three years confinement.

While driving Interstate Highway 610 in Houston on September 25, 1976 at approximately 12:30 a. m., Kelly Bitner and his fiancee observed appellant's then new 1977 black truck pass them headed south. The couple lost sight of the truck at the San Felipe overpass, but on coming over a rise they saw sparks at the far right side of the highway, and then observed appellant's truck careening across the freeway toward the left guard rail. An old pickup truck which had apparently been parked on the shoulder of the road because of a flat tire, rested off the right shoulder in the grass in a position 180 degrees from the way it had been parked on the shoulder. Two people were killed as a result.

Appellant's three grounds of error attack the admission of the results of an analysis made of his urine, a sample of which was obtained without appellant's consent a few hours after the collision.

Outside the presence of the jury, the following testimony was developed: Officer K. D. McGinn, a Houston Police Department accident investigator, obtained information at the collision scene which led him to seek appellant who had been taken to Ben Taub Hospital. On confronting appellant McGinn asked what had happened. Appellant replied, "I don't know what happened. I don't even know what I hit." McGinn testified that he could smell a strong odor of alcohol on appellant; from this, coupled with observations of appellant's walk, slurred speech and inability to sign his name on a consent to treatment form, McGinn formed an opinion that appellant was intoxicated.

McGinn talked with appellant as he lay on a stretcher; appellant said he needed to go to the restroom. McGinn checked with the nurse in charge who said appellant could do so, and McGinn obtained a styrofoam cup from the nurse as appellant got down from the stretcher. McGinn accompanied appellant into the restroom; after appellant had begun to urinate, McGinn placed the styrofoam cup in front of appellant so as to collect a specimen of urine. According to McGinn, appellant was aware of what the officer was doing and neither affirmatively consented nor objected in any way.

McGinn then left the hospital in order to deliver the specimen to the Houston Police Department where he left it in a crime lab lock box. Approximately 2½ hours later McGinn and another officer returned to Ben Taub Hospital in order to place appellant under arrest and confine him in the county jail.

After the trial court ruled McGinn's testimony admissible and it was elicited before the jury, the State called a police department chemist and toxicologist who testified that analysis of appellant's urine revealed a .15% blood alcohol content.[2]

---

1. Section 19.05, V.T.C.A., Penal Code provides:
   (a) A person commits an offense if he:
      \*    \*    \*    \*    \*    \*
     (2) by accident or mistake when operating a motor vehicle while intoxicated and, by reason of such intoxication, causes the death of an individual.
   (b) For purposes of this section, "intoxication" means that the actor does not have the normal use of his mental or physical faculties by reason of the voluntary introduction of any substance into his body.
   (c) An offense under this section is a felony of the third degree.

2. Article 6701*l*-5, Section 3, V.A.C.S. provides in germane part:

   "(a) Upon the trial of any criminal action or proceeding arising out of acts alleged to have been committed by any person while driving or in actual physical control of a motor vehicle and while under the influence of intoxicating liquor, evidence of the amount of alcohol in the person's blood, breath, urine, or any other bodily substance, shall be admissible and *if there was at that time 0.10 percent or more by weight of alcohol in the person's blood, it shall be presumed that the person was under the influence of intoxicating liquor.*" [Emphasis supplied.]
   The trial court submitted a jury instruction to this effect.

Appellant now specifically complains that "seizure" of the urine sample from him was without consent, and because he was under arrest at the time of the non-consensual "seizure," Art. 6701*l*–5, Section 1, V.A.C.S.[3] prohibited the admission into evidence of the results of the analysis.

Appellant correctly states that *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966),[4] and this Court's opinion on rehearing in *Olson v. State*, 484 S.W.2d 756 (Tex.Cr.App.1972), "have removed the constitutional impediment of consent as to the taking of a blood test or other chemical tests;" however, "this does not obviate the necessity of compliance with statutory provisions, even though statutory requirements may not now be constitutionally required." *Olson*, at 772.

Our statutory prohibition [5] against admission of non-consensual chemical analysis for blood alcohol content other than by breath analysis, has been held "by its explicit terms [to apply] only to persons who have been arrested." *Bennett v. State*, 522 S.W.2d 507, 509 (Tex.Cr.App.1975). Therefore, the dispositive issue presented by this ground is whether appellant was under arrest at the time Officer McGinn obtained the specimen of his urine.

Appellant urges that the surrounding facts and circumstances illustrate that he was restrained in his liberty of movement at the hospital, and therefore, an arrest had been effected notwithstanding the fact that appellant was not actually taken into custody. There is, however, nothing in the record before us which supports this assertion.

Officer McGinn testified that he neither restrained appellant in any way, nor instructed any other officer to guard appellant during McGinn's 2½ hour absence from the hospital. According to McGinn, no one would have stopped appellant had he attempted to leave at anytime before he was taken physically into police custody. McGinn testified that he did nothing to compel the collection of the sample of appellant's urine. Appellant testified on cross-examination that the first time he saw McGinn was when he and Officer D. H. Mays took appellant into custody at approximately 4:30 a. m. Appellant denied that McGinn had earlier questioned him about what had happened at the scene of the collision, and further denied that McGinn had either accompanied him to the restroom or obtained any of his urine.

Under this state of facts, we hold that appellant was not under arrest, and evidence of the chemical analysis of the urine McGinn obtained without affirmative consent from appellant was admissible. *Bennett*, supra. This ground of error is overruled.

Appellant next contends that securing a urine sample from him without his consent constituted an unreasonable seizure under the Fourth Amendment [6] to the Unit-

---

3. Article 6701*l*–5, Section 1, V.A.C.S. provides:

   Any person who operates a motor vehicle upon the public highways of this State shall be deemed to have given consent, *subject to the provisions of this Act*, to a chemical test, or tests, of his breath for the purpose of determining the alcoholic content of his blood *if arrested* for any offense arising out of acts alleged to have been committed while a person was driving or in actual physical control of a motor vehicle while under the .influence of intoxicating liquor. Any person *so arrested* may consent to the taking of any other type of chemical test, or tests, to determine the alcoholic content of his blood, but *he shall not be deemed, solely on the basis of his operation of a motor vehicle upon the public highways of this State, to have given consent to any type of chemical test, or tests, other than a chemical test, or tests, of his* breath. The test, or tests, shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving or in actual physical control of a motor vehicle upon the public highways of this State while under the influence of intoxicating liquor.

4. *Schmerber* held that blood test evidence, although an incriminating product of compulsion, is neither testimonial nor relating to a communicative act or writing on the part of an accused, and is not, therefore, violative of the Fifth Amendment privilege against self-incrimination.

5. See n. 3, supra.

6. "The right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated . . . .."

ed States Constitution. The thrust of appellant's complaint is that Officer McGinn's actions were "unreasonable" under the circumstances in that the urine sample was not "taken by a physician in a hospital environment according to accepted medical practices" as blood had been extracted in *Schmerber*, supra, and thereafter approved by the Supreme Court. While appellant concedes that McGinn's actions did not involve an intrusion into his body, he nevertheless contends that they "did involve a collection of appellant's body fluids, which is arguably an extension of his body." Appellant further urges that "appellant's sanctity as a human being was violated by the search and seizure method which Officer McGinn utilized, [because] appellant never consented;" and finally, "appellant's constitutional right of privacy was violated by this unreasonable, involuntary seizure of his urine . . . where there were no extreme circumstances to warrant the intrusion."

A thorough review of the record before us reveals no written motion to suppress challenging the seizure of the urine on the ground now urged; nor did appellant offer any objection to the evidence based on a Fourth Amendment breach at either the time the State offered McGinn's testimony or the expert testimony concerning the analysis of the urine sample. Because a primary purpose of requiring timely specific objections is to apprise the trial court of a party's complaint and thereby afford the judge an opportunity to rule,[7] it is elementary that only those grounds which have been urged in the court below may be presented to this Court for appellate review. *Lejeune v. State*, 538 S.W.2d 775 (Tex.Cr.App.1976). Appellant's failure to raise his Fourth Amendment claim at trial constitutes a waiver of that complaint. *Writt v. State*, 541 S.W.2d 424 (Tex.Cr.App.

1976); *Connally v. State*, 492 S.W.2d 578 (Tex.Cr.App.1973).

■ Notwithstanding such waiver the record as a whole contradicts appellant's complaint that he was the victim of an invasion of privacy, establishment of which is a prerequisite to contest of the validity of a search and seizure. *Kleasen v. State*, 560 S.W.2d 938 (Tex.Cr.App.1978); see also, *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969).

> The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, *not by those who are aggrieved solely by the introduction of damaging evidence.* [Emphasis supplied] *Alderman*, 394 U.S. at 171, 172, 89 S.Ct. at 965.

■ In addition to appellant's failure to make affirmative complaint of his subjection to an unreasonable search and seizure at trial, appellant's direct testimony was that McGinn neither accompanied him to the restroom nor procured any of his urine; restated, appellant denied that a search of his person or a seizure of his "body fluid" ever occurred.

Clearly, alleged injury incident to a search and seizure necessarily assumes that a search and seizure was conducted. Cf. *Warren v. State*, 565 S.W.2d 931 (Tex.Cr. App.1978) [wherein the rationale for denying the defense of entrapment to one who denies commission of the offense involved is stated as being that the defense of entrapment necessarily assumes that the act charged was committed]. Appellant has accordingly failed to establish resultant injury to himself which would preclude the introduction of testimony against him gained as a result of the seizure he attacks on appeal. Cf. *Hensley v. State*, 494 S.W.2d 816 (Tex.

---

7. In *Zillender v. State*, 557 S.W.2d 515, 517 (Tex.Cr.App.1977), it was stated:

> The generally acknowledged policies of requiring specific objections are twofold. First, a specific objection is required to inform the trial judge of the basis of the objec-

tion and afford him an opportunity to rule on it. Second, a specific objection is required to afford opposing counsel an opportunity to remove the objection or supply other [evidence].

Cr.App.1973).[8] Appellant's second ground of error is without merit.

■ Lastly, appellant contends that the non-consensual seizure of the urine sample from him was so offensive as to "shock the conscience" and thus constituted a denial of due process of law.

Again, notwithstanding appellant's failure to apprise the trial court on this ground of complaint,[9] we will address it in the interest of justice. See Art. 40.09, Section 13, V.A.C.C.P.

Appellant relies on *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952) for advancement of the proposition that the police procedures employed to obtain a sample of his urine were "so brutal and offensive" as to violate due process. This contention is without merit.

In *Rochin*, supra, police officers unlawfully entered the defendant's home and bedroom, and saw capsules on the nightstand, at which time the defendant put the capsules in his mouth. The officers jumped on him and unsuccessfully attempted to extricate the capsules. The defendant was then handcuffed, taken to a hospital and forcibly given an emetic which caused vomiting and ultimately allowed the recovery of morphine capsules. The Supreme Court stated that this procedure shocked the conscience, offended "even hardened sensibilities," and

that such a method was "too close to the rack and the screw to permit . . . constitutional differentiation." 342 U.S. at 172, 72 S.Ct. at 210.

By contrast, the court held in *Breithaupt v. Abram*, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957), that no due process right had been abridged by the extraction of a sample of a suspect's blood by an attending physician at the request of an officer while the motorist lay unconscious in the hospital. The absence of conscious consent, without more, was held not to necessarily render the taking a violation of a constitutional right.

> . . . [D]ue process is not measured by the yardstick of personal reaction or the sphygmogram of the most sensitive person, but by that whole community sense of 'decency and fairness' that has been woven by common experience into the fabric of acceptable conduct.

352 U.S. at 436, 77 S.Ct. at 410.

It is immediately apparent that the intrusion by the State involved in the procedure employed in *Breithaupt*, supra,[10] was greater than the intrusion, if any, made on appellant as established by the testimony of Officer McGinn. We think the chasmal distinction between the "brutal" procedure utilized in *Rochin*, supra, and the procedure applied in the instant case, speaks for itself.

> As against the right of an individual that his person be held inviolable, even against *so slight an intrusion as is involved in applying a blood test* of the kind to which millions of Americans submit as a matter of course nearly every day, must be set the interests of society in the scientific determination of intoxication, one of the great causes of the mortal hazards of the road. And the more so since the test likewise may establish innocence, thus affording protection against the treachery of judgment based on one or more of the senses. Furthermore, since our criminal law is to no small extent justified by the assumption of deterrence, the individual's right to immunity from such invasion of the body as is involved in a properly safeguarded blood test is far outweighed by the value of its deterrent effect due to public realization that the issue of driving while under the influence of alcohol can often by this method be taken out of the confusion of conflicting contentions. [Emphasis supplied]

**8.** In *Hensley*, the appellant disclaimed ownership of the automobile searched and this Court held he had no standing to contest the search. This is arguably analogous to the situation presented here where appellant claims that the urine on which analysis was made was not his urine.

We do not say that a complaint as to the integrity of evidence introduced and used to convict is invalid; we merely reason that such a complaint is improperly grounded on the Fourth Amendment.

**9.** Only after his other objections were overruled did appellant mention generally, "it comes under due process, the Fourteenth Amendment . . .," to which the trial court remarked, "All right, sir."

**10.** In concluding the intrusion in *Breithaupt* was wholly justified and consistent with principles of due process of law, the court stated at 439, 440 of 352 U.S., at 412 of 77 S.Ct.:

Appellant's three grounds of error are overruled.

The judgments of conviction are affirmed.