**Willie Burke GIBSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 62720.**

Court of Criminal Appeals of Texas, En Banc.

March 4, 1987.

Frank B. McGregor, Hillsboro, for appellant.

Neal T. Jones, Jr., Dist. Atty., Hillsboro, Robert Huttash, State's Atty., and Alfred Walker, First Asst. State's Atty., Austin, for the State.

## OPINION ON STATE'S THIRD MOTION FOR REHEARING

W.C. DAVIS, Judge.

A jury found appellant guilty of the offense of murder and assessed punishment at life imprisonment in the Texas Department of Corrections.

The record reflects that appellant had been previously convicted and sentenced to life imprisonment in the same cause. However, the trial judge subsequently granted appellant a new trial pursuant to Art. 40.-09, V.A.C.C.P., prior to the 1981 amendment. During appellant's re-trial in the instant case the prosecutor impermissibly cross-examined appellant about his former trial and the punishment he there received. See Art. 40.08, V.A.C.C.P.[1]

On this, the third motion for rehearing, the State argues that our opinion on the second motion for rehearing erred in failing to require an objection in order to preserve error for violations of Art. 40.08, V.A.C.C.P. We have re-examined the issue and believe our prior opinion was in error.

Appellant first mentioned his prior incarceration during direct examination. Then, in a non-responsive answer to the State's cross-examination appellant referred to his former conviction in the same cause. The State went on to ask several other questions about appellant's prior incarceration without objection from appellant's counsel. Specifically, the following occurred,

Q. [By appellant's counsel]: Mr. Gibson, directing your attention to April 2nd, 1978, do you remember that day?

A. I remember.

Q. As a matter of fact have you been locked up since that date?

A. Right.

Q. Now, where are you now?

A. I am in the Hillsboro jail.

\*     \*     \*     \*     \*     \*

Q. [By State's attorney]: Mr. Gibson, I think you testified that you have been in the Hill County jail for one year?

A. No, I have been in the State penitentiary for life.

Q. What cause was that on?

A. This one.

Q. It was tried once before, wasn't it?

A. Right.

Q. The jury gave you life, didn't they?

A. Right.

Q. Okay. You have been in the pen now for how many months?

A. I left there in—I say five months.

Q. Okay. And you have been back since the judge granted you a new trial?

A. Right. Came back on the 10th of March.

Q. Okay. That trial took place right here in this courtroom?

A. Yes, sir.

Q. With a jury that sentenced you to life?

A. Sir?

Q. Was it a jury sitting up here that also sentenced you to life imprisonment?

Article 1.14, V.A.C.C.P., reads:

The defendant in a criminal prosecution for any offense may waive any rights secured him by law except the right of trial by jury in a capital felony case.

■ By failing to object to the State's cross-examination appellant effectively waived his right to have the facts pertain-

---

1. Art. 40.08, V.A.C.C.P. provides:
   The effect of a new trial is to place the cause in the same position in which it was before any trial had taken place. The former conviction shall be regarded as no presumption of guilt, nor shall it be alluded to in the argument.

ing to his previous trial kept secret from the jury.

Generally, appellate courts will not consider any error which counsel for the accused could have called, but did not call, to the attention of the trial court at the time when such error could have been avoided or corrected by the trial court. See *Rogers v. State*, 640 S.W.2d 248 (Tex.Cr.App.1982) (on rehearing); *Esquivel v. State*, 595 S.W.2d 516 (Tex.Cr.App.), *cert. denied* 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980). This Court has held that a defendant can not raise for the first time on appeal a ground of error alleging that his constitutional rights guaranteed by the Sixth and Fourteenth Amendments were violated by improper identification procedures. See *Dunlap v. State*, 477 S.W.2d 605 (Tex.Cr.App.1971). Similarly, in *Crawford v. State*, 617 S.W.2d 925 (Tex.Cr.App. 1981) (on rehearing), this Court held that the failure to object to the improper exclusion of a prospective juror in a capital murder case constituted waiver of that error. In *Darland v. State*, 582 S.W.2d 452 (Tex.Cr.App.1979), the Court held that errors concerning the improper introduction of evidence under the fourth amendment were waivable lacking timely trial objection. See also *Dunavin v. State*, 611 S.W.2d 91 (Tex.Cr.App.1981); *Lejeune v. State*, 538 S.W.2d 775 (Tex.Cr.App.1976). Also, in *Branch v. State*, 477 S.W.2d 893 (Tex.Cr.App.1972), the Court held that the contemporaneous objection rule applied in appeals from orders revoking probation.

The holdings of these cases and many others are based upon the rationale requiring contemporaneous objections:

> ... a primary purpose of requiring timely specific objections is to apprise the trial court of a party's complaint and thereby afford the judge an opportunity to rule, [Because of this] it is elementary that only those grounds which have been urged in the court below may be presented to this court for appellate review.

*Darland*, supra, 582 S.W.2d at 455.

We conceive of no reason to hold statutorily based errors, even those arising under Article 40.08, to any lesser requirements for preservation of error. Because no objection was made in the instant case the trial court was not apprised of appellant's complaint and was thus not given a chance to avoid or correct it. To the extent that *Wyatt v. State*, 58 Tex.Cr.R. 115, 124 S.W. 929 (Tex.Cr.App.1910); *Eads v. State*, 74 Tex.Cr.R. 628, 170 S.W. 145 (Tex.Cr.App. 1914), and *Butler v. State*, 147 S.W.2d 1087 (Tex.Cr.App.1941), suggest that it is the trial court's duty to intervene in cases where Article 40.08 has been violated regardless of defense counsel objections, they are overruled.

The instant case is analogous to *Miracle v. State*, 604 S.W.2d 120 (Tex.Cr.App.1980). In *Miracle*, supra, the defendant introduced into evidence certain medical records which contained information concerning his prior trial in the same cause. During jury argument the State's attorney referred to this information without objection by defense counsel. On appeal, the defendant contended that this violated Article 40.08, V.A.C.C.P. This Court declined to reverse the case, stating,

> In the instant case the appellant introduced the evidence to which the prosecutor made reference in his argument which was unobjected to. The complaint concerning the argument is raised for the first time on appeal. Under the circumstances in which the disclosure was made, the lack of objection, etc., the appellant is in no position to complain.

*Miracle*, supra, 604 S.W.2d at 128.

Similarly, in the instant case appellant initially referred to his former conviction with a nonresponsive answer to the State Attorney's question seeking to make clear evidence introduced during appellant's direct testimony. Subsequently, appellant's counsel voiced no objection as the State's Attorney examined him further as to his prior trial and sentence. For this reason appellant waived this ground of error.

Due to our disposition of the State's motion for rehearing we now address appellant's remaining grounds of error.

On the morning of April 1, 1978, appellant, T.V. Pereida (the deceased in the instant case), Willie Robinson and Elmer Ray

Terrell met at Robinson's house in Bynum and began drinking. Shortly thereafter, the four men drove to West where they continued drinking and shot several games of pool at a small local bar. Later that afternoon they returned to Robinson's house.

The evidence is not clear as to exactly how much alcohol the men consumed. However, the evidence shows that each man drank at least five or six beers and several shots of whiskey over the space of two or three hours. An autopsy on the deceased revealed a blood alcohol content of 0.35%, an amount sufficient to kill one-half of the adult population.

Just prior to their return to Bynum, appellant became extremely angry with Pereida. This dispute led to an altercation inside Robinson's house where appellant pushed Pereida to the floor. Beatrice Robinson, the wife of Willie Robinson and appellant's aunt, testified that she had never seen appellant act as he did on that afternoon, that he acted "like a crazy man", and that his eyes appeared glazed over.

Appellant was persuaded to leave Robinson's house and as he did so, Pereida followed him outside. The altercation continued with appellant shoving Pereida down in the driveway. Appellant then got into his car and backed up so that he could make a U-turn in the driveway and bring the car forward into the street. However, when appellant attempted this turn he struck Pereida, killing him.

Appellant testified that he had been suffering from memory loss and "blinking out" spells and he did not remember running over Pereida. He also said that if he did indeed kill Pereida by hitting him with a car he did not intend to do so. Appellant wavered when asked whether he believed he was intoxicated, stating that he did not believe he had consumed enough alcohol to cause intoxication. However, he also testified that he felt intoxicated and did not remember how much alcohol he consumed that day.

Appellant argues that it was error for the trial court to refuse to include his requested instruction on the lesser included offense of involuntary manslaughter. He argues the evidence presented during the guilt phase of trial raised the possibility that he, if guilty of an offense at all, was guilty only of involuntary manslaughter. Specifically, appellant points to the evidence that all four men had been drinking heavily throughout the day, that Pereida was found to have a blood alcohol content of 0.35%, that he testified that he believed it possible that he was intoxicated, and that Beatrice Robinson testified that appellant acted like a crazy man and his eyes appeared glazed over.

In *Almanza v. State*, 686 S.W.2d 157 (Tex.Cr.App.1985), this Court held that jury charge error should be reviewed by appellate courts in accordance with Art. 36.19, V.A.C.C.P. First, the appellate court must determine whether error exists in the charge. Second, the appellate court must determine whether the defendant was sufficiently harmed by the error to require reversal. *Almanza*, supra at 172; *Arline v. State*, 721 S.W.2d 348 (Tex.Cr.App.1986).

Initially, we determine whether it was error to refuse appellant's requested instruction.

V.T.C.A., Penal Code, § 19.05 describes the offense of involuntary manslaughter. It reads in relevant part:

(a) A person commits an offense if he:

\*  \*  \*  \*  \*  \*

(2) by accident or mistake when operating a motor vehicle while intoxicated and, by reason of such intoxication, causes the death of an individual,

(b) For purposes of this section, 'intoxication' means that the actor does not have the normal use of his mental or physical facilities by reason of the voluntary introduction of any substance into his body.

It is well established that if evidence from any source raises the issue of a lesser included offense or a defensive theory, it must be included in the court's charge. *Ojeda v. State*, 712 S.W.2d 742 (Tex.Cr.App.1986); *Bell v. State*, 693 S.W.2d 434 (Tex.Cr.App.1985); *Lugo v. State*, 667 S.W.2d 144 (Tex.Cr.App.1984). Further, it

is not the court's function to determine the credibility or weight to be given the evidence raising the defensive issue or lesser included offense. The fact that the evidence raising the issue may conflict or contradict other evidence in the case is not relevant to the determination of whether a charge on the issue must be given. Rather, it is the jury's duty, *under proper instruction*, to determine whether the evidence is credible and supports the defense or the lesser included offense. *Moore v. State*, 574 S.W.2d 122 (Tex.Cr.App.1978).

■ In accordance with the statute, a charge on involuntary manslaughter should be given when there is evidence from any source indicating that the defendant, by accident or mistake, caused the death of an individual while operating a motor vehicle under the influence of any substance which caused him to have less than normal use of his mental or physical faculties. See V.A. C.C.P., Penal Code, § 19.05(a)(2) and (b).

The instant case clearly contains such evidence. First, appellant had been drinking all day; second, he testified that he may have been intoxicated; and finally, he caused the death of an individual while operating a motor vehicle. Thus, it was error for the trial court to refuse his timely request that an instruction on involuntary manslaughter be included in the court's charge to the jury. We must now determine whether this omission harmed appellant.

The degree of harm required to cause an individual case to be reversed depends upon whether the error was preserved in the trial court. If the error was properly preserved at trial *any* harm, regardless of degree, is sufficient to require a reversal of the conviction. "Cases involving preserved charging error will be affirmed only if *no* harm has occurred." *Arline*, supra, 721 S.W.2d at 351.

■ Non-preserved error in the court's charge requires a higher level of harm to cause reversal. In cases where the error was not preserved the harm to the defendant must be "egregious", i.e., so harmful that the defendant was denied "a fair and impartial trial." *Almanza*, supra at 172; *Arline*, supra.

■ In the instant case the error was properly preserved by appellant's timely requested jury instruction. Therefore, *any* harm resulting to appellant will require a reversal. There is evidence in the case raising the lesser included offense of involuntary manslaughter and the jury should have been afforded the opportunity to decide whether the offense committed by appellant constituted involuntary manslaughter, a third-degree felony, rather than murder, a first-degree felony. Because the jury was not given this opportunity we cannot say that no harm resulted to appellant. Accordingly, our opinion on State's second motion for rehearing is withdrawn. However, due to other trial court error the cause is reversed and remanded to the trial court for new trial.

ONION, P.J., dissents.

CAMPBELL, J., not participating.

DUNCAN, Judge, concurring in part and dissenting in part on State's third motion for rehearing.

In *Wyatt v. State*, 58 Tex.Cr.R. 115, 124 S.W. 929 (Tex.Crim.App.1910) the prosecuting attorney asked the defendant the following: " 'Have you not been convicted and given ten years in this case?' " *Id.*, 124 S.W. at 929. The trial court, unprompted by an objection, rebuked the prosecutor and instructed the jury to disregard the question. On appeal, this Court, while acknowledging and endorsing the trial court's sua sponte intervention as an effort to "minimize the wrong done in asking the question," *Id.*, evidently judged the prosecutor's conduct such a flagrant violation of Art. 823 Code Cr. Proc. 1895 (a predecessor statute to Art. 40.08 V.A.C.C.P.) that it nevertheless reversed the defendant's conviction.

Now, seventy-seven years later, with the figurative stroke of a pen, that statutorily mandated trial principle falls prey to the ravenous contemporaneous objection rule.

The reversible error in this case is not predicated upon the appellant's responses

to the prosecutor's questions, but instead, as in *Wyatt v. State*, supra, the questions themselves. Although the appellant volunteered to the jury that he had been in jail for some time it did not know why he had been in jail until the prosecutor asked this series of questions: "What cause was that on?"; "It was tried once before, wasn't it?"; and "The jury gave you life, didn't they?"

I can perceive of no greater prejudice to a defendant's right to a fair trial than a jury being aware that the defendant has not only been previously tried for the same offense but, as in this case, the punishment assessed by the previous jury. Unless of course, the defendant wants the jury to have such information. This is what occurred in *Miracle v. State*, 604 S.W.2d 120 (Tex.Crim.App.1980). The intentional disclosure of that information by the defendant is what distinguishes *Miracle v. State*, *Id.*, from this case.

I similarly cannot perceive of any reason that the damage to a defendant's right to a fair trial by revealing this information is any less in 1987 than it was in 1910. I concur with what the Court said then: "It is unfortunate that we should under such circumstances be required to reverse a case. But we cannot consent to the impairment or infringement of a right which the law in express terms gives every defendant, however humble." *Wyatt v. State*, supra, 124 S.W. at 930 I dissent to what the court says now.

Finding the ultimate disposition of the case appropriate, however, I concur with the result reached by the majority.

CLINTON and TEAGUE, JJ., join this opinion.