**Richard Conan LEWIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 59048.**

Court of Criminal Appeals of Texas, Panel No. 1.

May 7, 1980.

---

3. We cannot review the materiality of the affidavit of appellant's husband, since it was not included in the record.

Melvyn Carson Bruder, Dallas, for appellant.

Henry Wade, Dist. Atty. and William M. Lamb, Asst. Dist. Atty., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and ODOM and W. C. DAVIS, JJ.

## OPINION

ONION, Presiding Judge.

This appeal is taken from a conviction for burglary of a building. Punishment, enhanced under V.T.C.A., Penal Code, § 12.-42(d), was assessed at life imprisonment.

In four grounds of error appellant contends the trial court erred in admitting items found in the home of a co-defendant,

in admitting a knife taken from him incident to arrest, in that a defense witness was improperly impeached on cross-examination, and in that there was no competent evidence to prove the enhancement allegations of the indictment.

Jeff Fields, a sales contractor for the Dallas Morning News, was servicing his vending machines at 3:15 or 3:30 a. m. on February 18, 1977 when he drove near a Mr. M store on Henderson Street, where he had a vending machine. He observed the window of the store broken out and drove on to a motel and called the police. He returned and parked half a block away from the store. He then observed two men crossing the street six feet away from him and who went within ten or twelve feet of the store. He saw no one enter the store. About this time officer Craig Kidd arrived on the scene. Fields pointed to the two men and they began to run. Kidd gave chase and with the assistance of other officers James Haynes was apprehended, but the other man, identified as the appellant, escaped. Frozen lunch meat was found along the path the men fled. The officers learned that Haynes lived at 5150 Richard Street, about two blocks from the store. Officer Phillip Moldon and other officers went to that address about 4 a. m. They found the front door open about a foot. A light was on in the living room and on a day bed they saw money in change, some coins on the floor, some cartons of Dr. Pepper, and a display case with a number of packages of cigarettes and several cigarette lighters. The officers entered and searched the house, finding no one there. The other officers left and Moldon hid behind a bedroom door. About an hour later, the appellant entered the house by the back door and went to the day bed in the living room and began counting the change. At this point Moldon appeared, placed the appellant under arrest, and incident to that arrest searched the appellant, taking from his person a knife which was identified at trial as appearing to be one of the knives taken from the burglarized store.

When Moldon went to Haynes' house, he knew there had been a store burglary, that Haynes has been seen with another man in the area who escaped and that Haynes had been apprehended and had given his address. He did not have a description or identification of the suspect who had escaped. He did not know what articles had been taken in the burglary, and did not know whether the articles he saw in the house were the fruits of the burglary. He acknowledged that he did not have Haynes' consent to enter the house and that he had neither an arrest warrant nor a search warrant.

James Haynes for the defense testified that he had known the appellant for several months and that on the evening in question he had been in bars drinking with the appellant. He related the appellant told him he was going to visit his girlfriend and was not sure whether he would be able to spend the night at her home and asked if he could stay at Haynes' house that night if necessary. Permission was granted. Haynes related that sometime during their bar-hopping he became aware that the appellant had left him. Haynes related he was drunk when he started home, that when he got to the Mr. M store he kicked out the window to get some beer, and that he took some beer and may have taken other items. He testified he took his loot to his house, and then returned to the area of the store and ran when he saw the police. He maintained he was alone at the time of the burglary and subsequent flight.

Appellant first contends that officer Moldon had no authority to walk up onto the front porch of Haynes' house to investigate, nor to enter the house and seize the items. As appellant states, the Fourth Amendment to the United States Constitution protects persons, not places, and the focus is properly on whether the person has a "reasonable expectation of privacy" under the circumstances. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Hudson v. State*, 588 S.W.2d 348, 350–351 (Tex.Cr.App.1979); *Green v. State*, 566 S.W.2d 578, 582–583 (Tex.Cr.App.1978). In *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), the United

States Supreme Court stated that " . . . one must have been a victim of a search or seizure, one against whom a search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else." 362 U.S. at 261, 80 S.Ct. at 731, 4 L.Ed.2d 697. The Court went on to hold that Jones had standing to complain about the search, even though the apartment in question was not his, because he had testified that he was there with the owner's permission, had a key to the apartment, had clothing there, and already had spent "maybe a night" there. It was held that " . . . anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him." 362 U.S. at 267, 80 S.Ct. at 734, 4 L.Ed.2d 697.

However, this formulation of the sufficiency of one's connection with searched premises to confer standing was recently rejected in *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). There, the Court stated,

"We do not question the conclusion in *Jones* that the defendant in that case suffered a violation of his personal Fourth Amendment rights if the search in question was unlawful.

"Nonetheless, we believe that the phrase 'legitimately on premises' coined in *Jones* creates too broad a gauge for measurement of Fourth Amendment rights. (Footnote omitted.) For example, applied literally, this statement would permit a casual visitor who has never seen, or been permitted to visit the basement of another's house to object to a search of the basement if the visitor happened to be in the kitchen of the house at the time of the search. Likewise, a casual visitor who walks into a house one minute before a search of the house commences and leaves one minute after the search ends would be able to contest the legality of the search. The first visitor would have absolutely no interest or legitimate expectation of privacy in the basement, the second would

have none in the house, and it advances no purpose served by the Fourth Amendment to permit either of them to object to the lawfulness of the search (Footnote omitted.)." 439 U.S. at 141–142, 99 S.Ct. at 429–430, 58 L.Ed.2d 387.

In rejecting the "legitimately on premises" language of *Jones*, the Court stated that the appropriate inquiry

" . . . is whether the challenged search or seizure violated the Fourth Amendment rights of a criminal defendant who seeks to exclude the evidence obtained during it. That inquiry in turn requires a determination of whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect." 439 U.S. at 140, 99 S.Ct. at 429, 58 L.Ed.2d 387.

■ By this standard, we hold that appellant has not made a sufficient showing of any personal Fourth Amendment interest in the premises and property in question. When officer Moldon and the others arrived, no one was at the house, the front door was open, and the lights were on. The only facts of record which have any bearing on appellant's interest in the premises are James Haynes' testimony that appellant had his permission to spend the night there, and the fact that an hour after the officers' entry and seizure of the property, appellant entered the house. The mere fact that appellant had permission to use the house that night could not confer upon him a reasonable expectation of privacy as to the front porch and the house *at the time the officers made their search*. From all that is shown by the record, appellant's entry into the house at approximately 5:00 a. m. was the first time he had been there that night. This offers no probative weight to his argument that his Fourth Amendment rights were violated. There was no motion to suppress the evidence complained of, and thus no attempt to offer evidence from appellant or any other competent source as to what relationship existed between appellant and the premises at the time the offi-

cers entered.[1] There may have been such a relationship, but appellant failed to establish its existence as he was required to do. *Darland v. State*, 582 S.W.2d 452 (Tex.Cr. App.1979); *Kleasen v. State*, 560 S.W.2d 938 (Tex.Cr.App.1977); see also *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). Appellant's first ground of error is overruled.

By his second ground of error, appellant alleges that his warrantless arrest was illegal, and that testimony relating thereto along with a knife found in a post-arrest search of his person were improperly admitted into evidence. His theory is that the authority to make a warrantless arrest is controlled exclusively by statute, *Heath v. Boyd*, 141 Tex. 569, 175 S.W.2d 214 (1943); *Honeycutt v. State*, 499 S.W.2d 662 (Tex.Cr. App.1973); *Hardison v. State*, 597 S.W.2d 355 (Tex.Cr.App.1980), and that no statutory provision authorized his arrest in the instant case.

 We agree with appellant's general observation regarding authority to make warrantless arrests. However, his contention that his arrest in the instant case was unauthorized ignores the existence of Article 18.16, V.A.C.C.P., which provides that:

"All persons have a right to prevent the consequences of theft by seizing any personal property which has been stolen and bringing it, with the supposed offender, if he can be taken, before a magistrate for examination, or delivering the same to a peace officer for that purpose. To justify such seizure, there must, however, be reasonable ground to suppose the property to be stolen, and the seizure must be openly made and the proceedings had without delay."

Much was made at trial of the candid admissions by officer Moldon that he did not *know* that the items in the living room had come from the burglary, nor did he *know* that appellant had committed the burglary.

Thus, it is argued, he had no probable cause to arrest. Knowledge, however, has never been the criterion for determination of probable cause. Probable cause to arrest exists when the facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information would warrant a reasonable and prudent person in believing that a particular person has committed or is committing a crime. *Jones v. State*, 493 S.W.2d 933 (Tex.Cr.App. 1973); *Jones v. State*, 565 S.W.2d 934 (Tex. Cr.App.1978). We find that officer Moldon had probable cause or "reasonable ground" to arrest appellant under all the circumstances, and had authority under Article 18.16, V.A.C.C.P., to do so without an arrest warrant. Appellant's second ground of error is overruled.

 By his third ground of error, appellant alleges that defense witness James Haynes was improperly impeached on cross-examination. The specific complaint is that Haynes was asked why he had not related at the time of his arrest the story given on direct examination. It is contended that the rule of *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976),[2] which prohibits impeaching a defendant's exculpatory testimony by use of his silence at the time of his arrest, should be extended to include defense witnesses. However, we note that there was no objection to this line of inquiry. Thus, nothing is presented for review, and the ground presents no fundamental error requiring review in the interest of justice. The ground of error is overruled.

 Appellant's fourth ground of error alleges that the "pen packets" used to prove the enhancement paragraphs were defective, and thus the trial court erred in finding the enhancement allegations true and assessing life imprisonment. We have examined appellant's contentions and find

1. There is no self-incrimination risk incurred by a defendant in such a situation. In *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), it was held that a defendant's testimony at a suppression hearing establishing his Fourth Amendment interest in premises or property may not be used by the prosecution at the guilt-innocence phase of his trial.

2. See also *Franklin v. State* (Tex.Cr.App. 57,348, May 24, 1978).

that they are without merit. *Thompson v. State*, 563 S.W.2d 247 (Tex.Cr.App.1978); *Rinehart v. State*, 463 S.W.2d 216 (Tex.Cr. App.1971), and cases cited therein. Appellant's fourth ground of error is overruled.

The judgment is affirmed.