Alfred Washington McVEA, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–81–00045–CR.

Court of Appeals of Texas, San Antonio.

April 7, 1982.

Petition for Discretionary Review Refused July 7, 1982.

Albert W. Van Cleave, III, San Antonio, for appellant.

Bill White, Dist. Atty., Douglas V. McNeel, Asst. Dist. Atty., San Antonio, for appellee.

Before ESQUIVEL, BUTTS and CANTU, JJ.

CANTU, Justice.

Appeal is taken from a°jury conviction for burglary of a building. The court assessed punishment, enhanced by two prior convictions, at life imprisonment.

Appellant asserts in his first ground of error that the trial court erred in failing to suppress evidence discovered as a result of an allegedly illegal search which resulted in his arrest. It thus becomes necessary to evaluate the testimony adduced at the hearing on the motion to suppress the evidence.

The two arresting officers, Arthur Trevino and Richard Asher, both of the San Antonio Police Department's Crime Task Force, were the only witnesses called to testify at the hearing. Their testimony reveals that on October 31, 1977, at approximately 11:00 a. m., they were working undercover, driving an unmarked police car westbound on Waverly Street when they spotted appellant in a car being driven eastbound. Only officer Trevino recognized appellant. He stated:

> I had seen him on the street before; also had mug shots of him in the car; also had knowledge from my partner that I used to work with. Officer Black told me who he was.
>
> \* \* \* \* \* \*

I had been told by my partner, Bob Glenn, that the subject had been arrested for burglary several times, on narcotics violations.

Officer Asher testified that he was not familiar with appellant's past history and that he did not recognize the man. They decided to follow the car in which appellant was a passenger. The car proceeded eastbound on Waverly Street and turned onto a street which intersects Culebra Street. The officers observed the car back up into the parking area of "Pete's Air Conditioning Service." The officers pulled into a car wash across the street and continued to observe appellant's activities.

■ The location had previously been placed under surveillance as a result of a "tip" received by Officer Trevino from an unidentified informant.[1] The informant had told Trevino "that the person that operates Pete's Car Air Conditioning Service buys stolen property from just about anybody who wants to sell it." On cross-examination he again stated that this unidentified informant told him "that this guy here at the shop there [sic] would buy anything from anybody." Trevino received this information the week before the arrest in the instant case. Officer Asher, in response to a question by appellant's attorney as to how long this location had been under surveillance, stated that "[m]y partner had gotten

the information that day, or the day before, something [sic] that there were people in this air conditioning place that were buying stolen property." Asher testified that he did not know the informant.

During their surveillance of this location, which Trevino estimated occurred three hours daily after receiving the tip, "questionable characters" were observed on different occasions entering and leaving the premises. When asked what he meant by "questionable characters," Trevino stated that "[m]ostly the persons we saw arrive at the location known to us to be drug addicts, didn't have any occupation, just generally run the streets all day." However, Trevino testified both on direct and cross-examination that he never saw any property being exchanged. Based upon his observations and what informants had told him, Trevino stated that he "surmised" that these people were going first to the "fence" to make arrangements for the price and then would later bring in the property. Officer Asher did not testify as to what he observed during the time that this location was placed under surveillance prior to October 31.

During the officers' observation from the car wash, appellant was seen getting out of the passenger side of the vehicle, the driver remaining in the car. Appellant walked around to the back porch of the building and approached a man whom Officer Trevi-

1. Pertaining to the informant, Trevino testified on direct examination that he had received the information from talking to a "few people". It was only on cross-examination by appellant that he attempted to narrow it down to one informant. The following colloquy took place:

Q: O.K., is this informant somebody known to you to be reliable?
A: He has been reliable in the past, yes, sir.
Q: How many times have you used him in the past?
A: You would have to consider him reliable about two or three times.
Q: You used him twice, or once before you—
A: Yes.
Q: You don't really know?
A: I have established his credibility in order to tell me something. I would believe what he would say.
Q: Can you tell me what he told you about this Pete and his place of business?

A: Yes, sir. He told me that this guy here at the shop there would buy anything from anybody. I don't care what it was, weapons, TVs, car stereos, tires. Whatever you had, he would buy.

While it is true that Trevino attempted to establish credibility by stating that he had received information from this informant in the past, we do not feel that the State met its burden of proving credibility. We interpret Trevino's testimony to be a mere assertion or conclusion that he considered the informant to be reliable. *See Cole v. State*, 484 S.W.2d 779 (Tex.Crim.App.1972). The State did not attempt to put on testimony as to this issue. There was no testimony as to some of the underlying circumstances upon which the informant based his conclusions. We feel that the informant's tip, standing alone, was insufficient to constitute probable cause. *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

no "believed" was the person who runs the business.[2] Appellant and this man, whom Trevino thereafter referred to as "Pete," walked to the back of the car, appellant opened the trunk and pulled out "what appeared to be a green laundry bag" with a drawstring at the top. He placed the bag on the ground, opened it, and allowed Pete to look into it. After looking, Pete nodded his head affirmatively. It was at this point that Trevino told his partner, "It's time to move."

The unmarked police car was backed up into the driveway, blocking the exit of the car in which appellant had been. The officers got out of the car "with badge in hand," advised the driver to remain where she was, and proceeded to the back of the car. As they approached appellant and Pete, Pete grabbed the bag, walked to an abandoned orange truck, placed the bag in the truck, slammed the door and began to walk away. Officer Trevino stopped him and ordered him to come back and get the bag out of the truck. The officer opened the bag and found an assortment of radio equipment which appeared to him to be new, because some of the items still had tags on them from a communication company. Appellant made no furtive gestures during this whole time but remained frozen in the position he had been in when first approached by the officer.

While Trevino was attending to the bag, Officer Asher was holding the trunk of the car open to prevent the appellant from possibly closing it. A fairly nice, new telephone answering machine was observed in the trunk. When asked about this property, appellant told the officer he had come "to leave it with Pete for some money that he needed." Trevino believed that appellant had said he was to receive $40.00.

Based upon his training and past experience, Trevino testified that he felt that this was a "transaction where properties were being sold to a known fence, and decided to place the [appellant] under arrest for having the property in his possession." The officers had never procured a warrant. After placing appellant and the driver of the car under arrest[3] and reading them their Miranda[4] rights, the property was seized and transported to the police department where it was turned over to the Task Force Office.

■ We begin with the well established proposition that a warrantless search or arrest is per se unreasonable. Coolidge v. New Hampshire, 403 U.S. 443, 454, 91 S.Ct. 2022, 2031, 29 L.Ed.2d 564 (1971); Honeycutt v. State, 499 S.W.2d 662, 664 (Tex. Crim.App.1973). It is the State's burden to prove the legality of a warrantless arrest or search. Coolidge v. New Hampshire, supra; Hooper v. State, 533 S.W.2d 762, 767 (Tex. Crim.App.1975). Since in the instant case, no warrants had issued, the State was required to show the existence of probable cause at the time the arrest or search was made, as well as the existence of circumstances which made the procuring of a warrant impracticable. Reed v. State, 522 S.W.2d 916, 917 (Tex.Crim.App.1975); Brown v. State, 481 S.W.2d 106, 109 (Tex. Crim.App.1972).

The standard applicable for determining whether the facts of the case support an officer's probable cause assessment at the time of the challenged arrest and search is no less stringent than that required to be shown a magistrate for the issuance of a warrant. Barber v. State, 611 S.W.2d 67, 68 (Tex.Crim.App.1981); Ochs v. State, 543 S.W.2d 355, 357 (Tex.Crim.App.1976) cert. denied 429 U.S. 1062, 97 S.Ct. 786, 50 L.Ed.2d 778 (1977). It has been held that

---

2. It appears as though Trevino did not even know who the person standing on the back porch was, much less whether he was the person who ran the business. A further reading of the record, outside the hearing on the motion to suppress, reveals that the officers did not learn the identity of this person until the arrest was made.

3. Pete's fate was not disclosed from the record.

4. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

probable cause to search or arrest exists where the facts and circumstances which are within the knowledge of the officer on the scene and of which he has reasonably trustworthy information would lead a man of reasonable caution and prudence to believe that he will find the instrumentality of a crime or evidence pertaining to a crime, or that the person to be arrested has committed or is committing a crime. *Brown v. State, supra,* at 110; *see also Lewis v. State,* 598 S.W.2d 280, 284 (Tex. Crim.App.1980); *Jones v. State,* 565 S.W.2d 934, 935 (Tex.Crim.App.1978). However, the mere inarticulable hunch, suspicion or good faith of the officer is insufficient to constitute probable cause. *Terry v. Ohio,* 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968); *Barber v. State, supra,* at 68.

■ The State argues in its brief that the officers were justified in entering the premises and detaining the appellant because this was part of an investigation into suspected criminal behavior. The officers, the State asserts, had sufficient specific and articulable facts to justify a temporary detention of appellant. *Terry v. Ohio, supra; Hernandez v. State,* 523 S.W.2d 410 (Tex. Crim.App.1975). We do not believe, under the circumstances of this case, that the arresting officers had an "articulable suspicion"[5] or a "particularized and objective basis" which entitled them to interfere with appellant's activities or detain him in order to investigate the suspected "fencing" operation, much less to conduct a search of this magnitude. *Compare United States v. Cortez,* 499 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

The evidence discloses that the officers had no reasonable and articulable facts implicating appellant, or any of the other per-

sons present at the scene, to a crime. According to Officer Trevino, the person who operated Pete's Air Conditioning Service was allegedly buying stolen property from anybody who wanted to sell. In fact, from an examination of his testimony, it is revealed that he only "believed" the man who spoke with appellant to be Pete because of information received from an undisclosed informant a week prior to the arrest in the instant case. It is true that the officer set up a surveillance of this location; however, we fail to see how it ever produced any corroborative evidence. No property was ever seen being exchanged at this location. The fact that "suspicious persons" were seen on a few occasions coming and going and that appellant had a criminal record are not the kind of sufficiently specific reasonable and articulable facts to warrant the officers' actions in this case. Further, the search of the bag and car trunk cannot be justified under *Terry v. Ohio, supra. See also Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). *Terry v. Ohio, supra,* authorized only a limited search of the outer clothing of a lawfully detained suspect, based upon the officer's reasonable and articulable belief that the suspect was armed and presently dangerous. The record indicates that no search of appellant's person was made until after he was placed under arrest, nor did the officers ever testify that they were in fear of violence by appellant or Pete.

■ Moreover, we do not agree with the State that this was a mere detention to investigate. The officers entered and conducted a full-blown search. It is elementary that there *must* be probable cause[6] to conduct such a search and it is apparent from the record that the officers did not

---

**5.** In *Reid v. Georgia,* 448 U.S. 438, 444, 100 S.Ct. 2752, 2753, 65 L.Ed.2d 890 (1980) the court characterized the suspicion necessary to curtail a person's liberty, in the absence of probable cause to arrest, as being *reasonable* and *articulable.* An "inchoate and unparticularized suspicion or hunch" will not suffice.

**6.** Where the standard is probable cause, a search or seizure of a person must be sup-

ported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be. *Ybarra v. Illinois, supra,* 444 U.S., at 91, 100 S.Ct., at 342, 62 L.Ed.2d, at 245.

have sufficient information to satisfy the quantum of probable cause necessary to procure the issuance of a warrant under the standards set forth in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Therefore, since the standard is "at least as stringent" in a warrantless search situation, the State has failed to sustain its burden of proving the legality of the search.[7]

■■■ We also reject the State's contention that the appellant lacked standing to complain of the search. No question of standing was raised at the trial.[8] The State raises this issue for the first time on appeal. In *Goehring v. State*, 627 S.W.2d 159, 164 (Tex.Crim.App.1982), the court noted, "The concept of having a Fourth Amendment claim has actually been replaced by the concept that a defendant must be able to show a reasonable expectation of privacy prior to asserting a Fourth Amendment claim. Matthew-Bender's *Texas Criminal Practice Guide*, (Vol. I, p. 30–6)." Therefore, in order to be entitled to seek suppression of evidence of a crime, a defendant must establish that some personal Fourth Amendment privacy interest of his was violated by police actions involving the premises searched or the property seized. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *Lewis v. State*, 598 S.W.2d 280 (Tex.Crim.App.1980). The "automatic standing" rule of *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) was overruled for possessory offenses in *United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980).[9]

While we admit that the evidence adduced at the hearing on the motion to suppress evidence could have been better developed,[10] we hold that the testimony of the officers, which was the only evidence offered at the suppression hearing, was sufficient to show that appellant had a reasonable expectation of privacy in the areas searched by the officers. It is true that appellant was on business premises open to the public, where privacy expectations normally existing are of somewhat different dimensions, *see Manry v. State*, 621 S.W.2d 619 (Tex.Crim.App.1981), however, appellant does not complain of a general search of the premises but of the *specific search conducted of the bag and the car trunk.* Thus the issue is whether appellant had a protected expectation of privacy in these areas.

■ The testimony revealed that appellant exerted control over the trunk of the car and it was apparent to the officers that he had stored in the trunk a laundry bag over which he also exerted control or manifested a possessory interest. *See United States v. Jeffers*, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed.2d 59 (1951). The subsequent action by Pete in grabbing the bag and throwing it into the abandoned truck did not amount to a negation or relinquishment of appellant's privacy interest in the bag. *See and compare United States v. Colbert*, 474 F.2d 174 (5th Cir. 1973) and *United States v. Canada*, 527 F.2d 1374 (9th Cir. 1975). Appellant never denied ownership,[11] *see United States v. Anderson*, 500 F.2d 1311 (5th Cir. 1974), nor was there evidence that the

---

7. The dissenting opinion mistakenly states that we are requiring probable cause to justify an investigative detention. We are not characterizing this as a simple investigatory detention, but rather a full-blown search conducted without the necessary probable cause. The right to stop for investigation does not confer upon the police officers the general power to search and seize.

8. Presumably the State recognized that *Brown v. U. S.*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973) conferred upon appellant standing under the four prong test in possessory crimes. This test was still in effect at the time of trial.

9. This did not occur until after the date of the trial in the instant case.

10. The appellant did not testify at the suppression hearing. This might have been the better course to follow since there is no self-incrimination risk incurred by a defendant by testifying at the suppression hearing. *See Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

11. In fact, Officer Trevino testified that when asked what he was doing with the property, appellant stated that he had come to leave it with Pete for some money that he needed.

bag had been unequivocally transferred to Pete, *see United States v. Canada, supra.* There was no evidence of an abandonment. *See United States v. Colbert, supra.* From the testimony of the officers, it was reasonably apparent that appellant maintained control of the trunk [12] and bag [13] to the exclusion of others and that he took normal precautions to maintain his privacy interest in them.[14] *Contrast Rawlings v. Commonwealth of Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980). We hold that the record affirmatively discloses a sufficient showing of appellant's personal Fourth Amendment interest in the property sought to be suppressed. *Cf. Lewis v. State, supra* : where the court stated, "There was *no* motion to suppress the evidence complained of, and thus *no* attempt to offer evidence from appellant or *any other competent source* as to what relationship existed between appellant and the premises at the time the officers entered." 598 S.W.2d, at 283, 284 (emphasis added).

Appellant also complains that the written statement made by him after his arrest should be considered a product of the unlawful search and arrest, and that the trial court erred in overruling his motion to suppress the confession. In *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) the court stated that the test for determining if evidence of this sort should be suppressed is not whether it would have come to light but for illegal actions of the police, but rather whether it has been "come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." 371 U.S., at 488, 83 S.Ct., at 417, 9 L.Ed.2d, at 455. We think it is clear in the instant case that the confession was "come at by the exploitation of that illegality" and

hence may not be used against appellant. *See Green v. State,* 615 S.W.2d 700 (Tex. Crim.App.1980).

Appellant, after being arrested without probable cause and without a warrant, made a confession after receiving the warnings prescribed by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In order for the causal chain to be broken between illegal search or arrest and statements made subsequent thereto, it must be shown that the confession was a sufficient act of free will to purge the primary taint; thus, a consideration of the statement's admissibility in light of the distinct policies and interests of the Fourth Amendment is mandated. *Brown v. Illinois,* 422 U.S. 590, 602, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416, 426 (1975).

■ The giving of *Miranda* warnings is an important factor in determining whether the confession has been obtained by exploitation of an illegal arrest, but it is not the only factor to be considered. The temporal proximity of the arrest and the confession, the presence of intervening circumstances, and particularly the purpose and flagrancy of the official misconduct are all relevant. The burden of showing admissibility rests on the State. *Brown v. Illinois,* 442 U.S., at 604, 95 S.Ct., at 2262, 45 L.Ed.2d, at 427; *see also Green v. State, supra,* and *In the Matter of L. R. S.,* 573 S.W.2d 888 (Tex. Crim.App.1978).

■ The evidence reveals that appellant was arrested and immediately transferred to the police station. Within an hour after the arrest, Detective Perez began interrogating appellant. This interrogation lasted approximately forty-five minutes, and culminated in the appellant signing a written statement. There were no intervening

---

12. Appellant was the one who opened the trunk, and the officers testified that they held the trunk open in order to keep appellant from closing it.

13. Appellant was the one who opened the drawstring to the bag and allowed another to look into it, thereafter drawing it shut.

14. The dissenting opinion's application of the open view doctrine to justify the seizure of the property in the trunk fails to recognize that there was nothing "inadvertent" about the viewing of the property; nor did the property constitute "contraband" in the absence of some showing that the officer *knew* that the property was the fruit of a crime. *See Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

events of any significance.[15] Concerning the purpose and flagrancy of the official misconduct, the State concedes that the purpose of the initial action of officers Trevino and Asher was investigation. This amounts to an admission that, prior to arriving on the scene, they had no probable cause to search or arrest appellant. There was no evidence that the detectives knew, prior to the time of appellant's interrogation, that the confiscated property had been taken in a burglary of S & P Communications Company. It appears that the officers and detectives embarked upon this whole expedition in the hope that evidence of some unspecified crime would be revealed. Thus, after considering the relevant factors in this case, we hold that the statement was the fruit of the unlawful search and arrest and that the State has failed to meet its burden of showing admissibility. *See Green v. State, supra.*

Grounds of error number one and two are sustained and the judgment is reversed and the cause remanded.

BUTTS, Justice, dissenting:

My dissent rests upon two principles: the constitutional law of "investigative stop" and appellant's failure to sustain his burden of proof that his Fourth Amendment privacy interest was violated by police actions involving the premises searched and the property seized.

This is a conviction for burglary of a building.

The testimony adduced at the hearing on the motion to suppress evidence established the following: On October 31, 1977, officers Arthur Trevino and Richard Asher of the San Antonio Police Department's Crime Task Force were conducting undercover surveillance on what they believed to be a major "fencing" operation, that is, a location in west San Antonio where they believed stolen property was being bought.

One of Trevino's informants, known to him as a "street person," had told him the week before that the proprietor of Pete's Car and Air Conditioning Service on Culebra Street was willing to buy any kind of stolen property—weapons, TV's, car stereos, tires, whatever. The informant had given him information on two or three previous occasions, and it had proven correct. The lead given by the informant was corroborated with other sources, and surveillance of Pete's was begun. From the time police surveillance began, the location was watched about three hours a day. Numerous persons known to be drug addicts who were unemployed "street people" were seen to come and go at Pete's, and were seen discussing with Pete what officer Trevino believed were negotiations for the "fencing" of stolen property. According to Trevino, based on his experience and his conversations with informants, persons seeking to sell stolen property often would go first to a "fence" to negotiate the price for a sale, and then would bring in the property at a later time.

On the particular day in question, at approximately 11:00 a.m., Trevino and Asher were driving west on Waverly Street, one block north of Culebra, and saw appellant riding as a passenger in an automobile being driven by a woman. It was later established that the woman's name was Linda Proctor, and that the car belonged to her. Trevino knew appellant on sight because he had seen him on the street before, had police "mug" photos of him in the car, and knew that appellant had had prior arrests for burglary and narcotics offenses. Trevino and Asher followed the other car until they saw it back into a driveway by the side of Pete's, the establishment which was under surveillance. The officers pulled into a car wash across the street and observed appellant's activities.

While they watched from the car wash, appellant got out of the car, opened the

---

15. The only intervening event of significance reflected by the record militates against the State: after appellant was arrested, but before his arrival at the county jail, officer Asher *admitted to* asking appellant questions concerning the incident. Appellant was not taken before a magistrate before signing the confession. *See* Tex.Code Crim.Pro.Ann. art. 15.17 (Vernon Supp.1981).

trunk, and removed a large green bag that had a drawstring around the opening. He placed the bag on the ground by the left rear of the car, and Pete walked out onto the back porch of a house next to the driveway. Pete walked up to where appellant and the bag were, appellant opened the bag, and then Pete bent over, looked into the bag, looked at appellant, and nodded affirmatively.

With this, the officers quickly drove their car into the driveway to block the exit of the car appellant had been in, got out of their car, told the woman in the driver's seat to stay put, showed their badges, and announced that they were police officers. Pete immediately grabbed the bag, dragged it 10 to 15 feet to an old abandoned mail truck, put it in the truck, slammed the truck door, and began to walk away. Trevino stopped him and ordered him to come back and get the bag out of the truck. Pete said, "I don't know what you are talking about." Trevino said, "The bag you placed in the truck." Pete retrieved the bag, and when Trevino opened it, he found in it numerous new-looking pieces of radio and electronic equipment, some with tags stating, "S. & P. Communications" on them. The total value of the equipment was over $5,000.00. It was later established that S. & P. Communications in San Antonio had been burglarized sometime on October 29th or 30th, and that the items in the bag had been stolen in that burglary. Apparently Trevino and Asher were not aware of the burglary at the time of they confronted Pete and appellant.

Throughout the officers' dealings with Pete, appellant had been standing at the rear of the car, and had said or done nothing. Asher stood by the open car trunk and held the lid open, so that appellant could not close it. After the bag was opened and the contents inspected, the officers saw a brand-new telephone answering machine lying in the trunk of the car. This was seized

along with the bag and its contents, and appellant and the woman were placed under arrest.[1] After arresting appellant, but before leaving the scene, Trevino talked to appellant, who stated that he had brought the property to leave it with Pete for $40.00.[2]

After being arrested and booked, appellant executed a written statement in which he confessed to having burglarized S. & P. Communications. He also stated in his confession that he went to Proctor's house on October 31, the day after the burglary. He stated, "I took the bag from the trunk of my car and put it in her car. . . . We drove over to some garage where the police stopped us and the radios were in the trunk of the car. . . . All I know is I wanted to sell the radios." Neither the written statement nor any testimonial evidence from appellant, Proctor, or Pete was offered before the trial court at the suppression hearing. Therefore, we cannot consider this statement in assessing the search and seizure issues in this case.

In his first ground of error, appellant attacks the lawfulness of the seizure of the bag and its contents, as well as the telephone answering machine seized from the proctor car trunk. The question is whether there was no justification for the initial intervention by the officers.

The State characterizes the officers' entry onto Pete's premises and their initial show of authority as an investigative detention. The constitutional validity of such an investigative stop is contingent upon the "specific and articulable facts and circumstances" within the officer's knowledge, as well as reasonable inferences drawn by the officer from those facts and circumstances. *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Scott v. State*, 549 S.W.2d 170, 171 (Tex.Crim.App.1977);

---

1. The record does not disclose Pete's fate.

2. The record is unclear whether this statement was elicited before or after the officers administered warnings to appellant under Tex.Code

Crim.Pro.Ann. art. 38.22 (Vernon 1979). There was no objection, however, when this testimony was offered at the hearing on the motion to suppress evidence.

*Brown v. State*, 481 S.W.2d 106, 109 (Tex. Crim.App.1972). It was stated in *Armstrong v. State*, 550 S.W.2d 25, 31 (Tex. Crim.App.1977),

> There must be a reasonable suspicion by the law enforcement officer that some activity out of the ordinary is or had occurred [sic], some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to crime.

In *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981), it was stated that a reviewing court must determine the reasonableness of the officer's action based on "the totality of the circumstances—the whole picture. . . ." 449 U.S. at 418, 101 S.Ct. at 695. The Court went on to state,

> The idea that an assessment of the whole picture must yield a particularized suspicion contains two elements, each of which must be present before a stop is permissible. First, the assessment must be based upon all the circumstances. The analysis proceeds with various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers. From these data, a trained officer draws inferences and makes deductions—inferences and deductions that might well elude an untrained person.
>
> The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

The second element contained in the idea that an assessment of the whole picture must yield a particularized suspicion is the concept that the process just described must raise a suspicion that the particular individual being stopped is engaged in wrongdoing. Chief Justice Warren, speaking for the Court in *Terry v. Ohio, supra*, said, "[t]his demand for specificity in the information upon which police action is predicated is *the central teaching of this Court's Fourth Amendment jurisprudence.*" *Id.* 392 U.S., at 21, n. 18, 88 S.Ct., at 1880, n. 18 (emphasis added). *See also, Brown v. Texas*, [443 U.S. 47, 51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979)]; *Delaware v. Prouse*, [440 U.S. 648, 661–663, 99 S.Ct. 1391, 1400–1401, 59 L.Ed.2d 660 (1979)]; *United States v. Brignoni-Ponce, supra*, 442 U.S., at 884, 95 S.Ct., at 2581.

449 U.S. at 418, 101 S.Ct., at 695. Thus, appellant's and the majority's insistence that the officers needed to have probable cause in order to justify their investigative detention of him is mistaken.

Under the circumstances as presented at the suppression hearing, the officers had an "articulable suspicion" which entitled them to enter the premises open to the public in order to investigate the suspected "fencing" operation. They could detain appellant and the other individuals involved and make further investigation. *United States v. Cortez, supra; United States v. Brignoni-Ponce, supra; Terry v. Ohio, supra; Manry v. State*, 621 S.W.2d 619 (Tex.Crim.App. 1981); *Greer v. State*, 544 S.W.2d 125 (Tex. Crim.App.1976). *Compare Peters v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).[3]

This court must determine whether appellant established that he has a reasonable

---

3. The circumstances in *Peters* were much less suspicious than in the present case. In his concurring opinion Justice Harlan noted, 392 U.S., at 78, 88 S.Ct., at 1909, 20 L.Ed.2d, at 943: "Unlike probable cause to arrest, reasonable grounds to stop do not depend on any degree of likelihood that a crime *has* been committed. An officer may forcibly intrude upon an incipi-

ent crime even where he could not make an arrest for the simple reason that there is nothing to arrest anyone for. Hence although officer Lasky has small reason to believe that a crime had been committed, his right to stop Peters can be justified if he had a *reasonable suspicion* (emphasis supplied by this writer) that he was about to attempt burglary."

and legitimate expectation of privacy in the business property of Pete and the bag taken from the trunk of Proctor's automobile, as well as that trunk itself. A review of the record reveals that he did not. In order to be entitled to seek suppression of evidence of crime, a criminal defendant must establish that some personal Fourth Amendment privacy interest of his was violated by the police actions involving the premises searched and the property seized. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *Lewis v. State*, 598 S.W.2d 280, 283 (1980).

The driveway in question was located on business property open to the public and not owned by appellant. From the instant appellant placed the bag on the ground and opened it, the only person who exercised any physical control over the bag consistent with a privacy interest in it was Pete. Pete looked into the bag, nodded his head affirmatively, and when the officers approached, it was he who tried, albeit unsuccessfully, to dispose of the bag. Even appellant's statement at the scene that he had brought the property to Pete for "some money" is consistent with his having surrendered it to Pete's control prior to the officers' intervention. Quite simply, that appellant failed at trial to establish that he had any "legitimate expectation of privacy," *see Rakas v. Illinois, supra*, 439 U.S., at 143, 99 S.Ct., at 430, in the truck at the time officer Trevino ordered Pete to remove the bag from it, or in the bag or its contents at the time Trevino searched and seized it. Appellant had the burden to demonstrate such an interest. It was incumbent upon appellant to show a possessory or propriety interest, *Goehring v. State*, 627 S.W.2d 159, 165 (Tex.Crim.App. 1982). *Lewis v. State, supra*, 598 S.W.2d at 284; *Darland v. State*, 582 S.W.2d 452, 455 (Tex.Crim.App.1979); *Kleasen v. State*, 560 S.W.2d 938, 941 (Tex.Crim.App.1977). Appellant presented no such evidence. His contention as to the admission of the contents of the bag into evidence is without merit.

The seizure of the telephone answering machine from the trunk of Proctor's car, and the subsequent admission of that item into evidence, presents no error. Items of contraband or fruits or instrumentalities of a crime may be seized by a police officer on sight if he has a prior justification for being in a position to see the item, if the discovery of the incriminating evidence is inadvertent, and if it is immediately apparent to the officer that the evidence before him is incriminating. *Coolidge v. New Hampshire*, 403 U.S. 443, 467–472, 91 S.Ct. 2022, 2039–2041, 29 L.Ed.2d 564 (1971); *McGlynn v. State*, (No. 67,435—Tex.Crim.App.—decided 12/23/81). We have determined already that the officers were entitled to be on the property in question, and saw the machine in the automobile trunk in plain view. We hold further that given the quantity of equipment found in the bag, its new condition, and the presence of distinctive store tags on much of the equipment, the officers were justified in concluding that the machine in the car trunk was also stolen property. Their seizure of that item and the admission of it into evidence was proper. In addition, appellant failed to show the necessary privacy interest in the trunk and is precluded from contesting the matter.

Appellant's written confession was admitted into evidence, over his objection. He contends that the illegal search and seizures at the scene tainted his confession and rendered it inadmissible. The officers' actions at the scene were lawful. Further, the appellant did not met the burden of showing any personal Fourth Amendment interest in the premises and property in question. Appellant's first ground of error should be overruled.

In his second ground of error appellant contends the court erred in admitting his written statement into evidence because it was involuntarily made. Appellant filed a motion to determine the voluntariness of his confession. In compliance with *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) and Tex.Code Crim.Pro. Ann. art. 38.22, § 6 (Vernon 1977), the court conducted a hearing based on appellant's motion. Appellant maintains he would not have made the confession had not

the officers promised to release Proctor, who was arrested with him. Officers Trevino and Asher, along with the officer who took the confession, testified there was no agreement and that Proctor was released for lack of evidence against her.

The judge at the *Jackson v. Denno* hearing is the sole judge of the weight of the evidence and credibility of the witnesses. He may believe or disbelieve all or any part of any witness' testimony. *Evans v. State,* 622 S.W.2d 866, 870 (Tex.Crim.App.1981), *Moon v. State,* 607 S.W.2d 569, 570 (Tex. Crim.App.1980), *Barton v. State,* 605 S.W.2d 605 (Tex.Crim.App.1980). The court's conclusion that the confession was voluntarily given after the appellant was fully apprised of his rights and waived those rights is supported by the evidence. This ground of error should be overruled.

I respectfully dissent.