Cecil Ruben CURREN, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–82–00009–CR.

Court of Appeals of Texas,
San Antonio.

June 15, 1983.

Mark Steven, San Antonio, for appellant.

Bill White, Dist. Atty., Robert C. Arellano, Edward Shaughnessy, Asst. Dist. Atty., San Antonio, for appellee.

Before BUTTS, CANTU and TIJERINA, JJ.

## OPINION

CANTU, Justice.

Cecil Ruben Curren appeals his conviction of possession of methamphetamine as a repeat offender. *See* Tex.Penal Code Ann. § 12.42 (Vernon 1974).

Guilt was established in a jury trial but the punishment following appellant's election, was set by the trial court at seven years' confinement in the Texas Department of Corrections.

Appellant seeks review of seven grounds of error. The first five grounds assert trial court error in the overruling of his motion to suppress. The sixth ground complains of the giving of a jury instruction on the law of parties. The final contention challenges the sufficiency of the evidence to support a conviction for "possession" of methamphetamine.

The facts developed at trial viewed in the light most favorable to the verdict reflect the following.

In the early morning hours of July 31, 1981, officer Walter Stillwagon of the Hill Country Village Police Department, and off duty officer Franklin Rodriguez of the Hollywood Park Police Department, were patrolling a residential street in Hill Country Village.[1] The officers were preparing to have breakfast together as Stillwagon made

---

1. Hill Country Village and Hollywood Park are both incorporated municipalities adjacent to the northern fringes of the City of San Antonio.

his rounds with Rodriguez following behind in a separate car.[2]

As Stillwagon patrolled on Paseo Del Norte Drive, he came upon a 1968 Chevrolet Impala automobile parked suspiciously alongside a median in the street. The vehicle was apparently out of gas, had a funnel sticking out of the gas tank, and had not been at that spot earlier. As the officers stopped their respective cars to investigate, Stillwagon noticed that there was no driver and that someone sitting in the front passenger part of the vehicle was ducking down in the front seat as if trying to hide. The passenger was a female who identified herself, upon Stillwagon's request, as Patricia Riggs. As Stillwagon examined Riggs' driver's license he noticed out of the corner of his eye a person moving in the distance in an area where heavy equipment was being stored. Stillwagon then requested Rodriguez to watch Riggs while he investigated the person seen moving in the distance. As Stillwagon approached the suspect he identified himself as a police officer and ordered the suspect to stop and turn around. The suspect, later identified as appellant, did as ordered and as he turned around Stillwagon noticed a baggie containing suspected marihuana sticking out of his front pocket.

A search of appellant's person conducted by Stillwagon yielded a pocket knife. Appellant was then escorted back to Stillwagon's police car where Riggs, by now out of the Impala, was being guarded by Rodriguez. Stillwagon then determined to place Riggs back inside the Impala while he talked to appellant. In making preparations to place Riggs inside the vehicle by first checking for possible weapons on the seat, Stillwagon noticed a zippered blue purse type object about one foot long and seven or eight inches high resting on the vehicle's dashboard in front of the steering wheel. In picking up the object, Stillwagon felt "several long, hard objects" which he believed to be some sort of weapon. Still-wagon opened the purse and saw a bottle containing a baggie which in turn contained a white powdery substance. Numerous other items were found inside the purse including two spoons, two syringes, a brown plastic bag with cotton balls and a metal spatula type object. Relying on his training at the law enforcement academy, Stillwagon suspected the powder to be heroin, and accordingly, placed both Riggs and appellant under arrest.

Pursuant to established departmental policy, Stillwagon called for a wrecker to impound the vehicle and commenced an on the scene inventory of the vehicle with the assistance of a recently arrived officer Keith Jones of the Hollywood Park Police Department.

As a result of the inventory search, various and sundry items were taken into custody for safekeeping. From the back seat of the Impala, Stillwagon retrieved a blue type duffel bag which contained a vial with some liquid and residue, a grinder, a sifter type object with a white powdery substance on it and a syringe. Also recovered from the front and rear seats were several white bags with a plant material in them, a scale, and a blue satchel containing a needle inside a plastic container. Stillwagon surmised that much of the property recovered constituted narcotic paraphernalia.

Initially appellant argues that officer Stillwagon did not possess specific and articulable facts to justify a belief that a weapon was present in the purse or in the automobile generally. We note that appellant did not testify at his motion to suppress hearing and that he did not offer any evidence establishing a proprietary interest in the purse containing the contraband.

■ Under *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), a defendant who seeks to suppress evidence of crime must show that some personal Fourth Amendment right of his was implicated in the police actions leading to seizure of the evidence. He must show that he himself

**2.** According to Stillwagon and Rodriguez it was a common practice for police officers of the two municipalities to act as cover officers for each other but on this occasion Rodriguez was not acting in an official capacity.

had some "legitimate expectation of privacy" that was improperly intruded upon by agents of the government. *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). This now applies with equal force to possessory offenses. The "automatic standing" rule of *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) was expressly abandoned in *Salvucci* and was not available to appellant at his hearing held on November 9, 1981, after the effective date of the *Salvucci* ruling.[3]

■ In the absence of some showing that appellant entertained a legitimate expectation of privacy in the purse and its contents, appellant is without standing to challenge the legality of the search. *Goehring v. State,* 627 S.W.2d 159 (Tex.Cr.App.1982); *Manry v. State,* 621 S.W.2d 619 (Tex.Cr.App.1981).

■ We nonetheless believe that officer Stillwagon possessed sufficient articulable facts to support an inference that a weapon was present in the seized purse. A search of appellant had already yielded a pocket knife and a cursory squeezing of the seized purse indicated the presence of "several long, hard objects."[4] Additionally, Riggs had been seen making furtive gestures when first approached by Stillwagon. The search of the purse was justifiable under the present facts. *Cf. Wood v. State,* 515 S.W.2d 300 (Tex.Cr.App.1974). Appellant's first ground of error is overruled.

■ In his second ground of error appellant contends that a general exploratory search was impermissible even assuming that officer Stillwagon was justified in conducting a *Terry v. Ohio*[5] type search. The argument is advanced that officer Stillwagon acted unreasonably when he decided to place Riggs back in the vehicle she had previously occupied, thus artificially creating a need to search the immediate vicinity within Riggs' reach for weapons. Appellant characterizes the officer's actions as "a thinly disguised and unreasonable pretext . . ." to expand the area of search.

We find no support for appellant's contentions in the record and for the reasons already expressed in our disposition of his ground of error number one, overrule this additional challenge.

Appellant next asserts that the trial court erred in not suppressing the white powdery substance (methamphetamine) found in the baggie inside the bottle located inside the purse because the search of the bottle was illegal since it was not immediately apparent to the officer that it contained incriminating evidence. Appellant relies upon *McGlynn v. State,* No. 67,435 (Tex.Cr.App., December 23, 1981) (not yet reported); *Brown v. State,* 617 S.W.2d 196 (Tex.Cr.App.1981); *Howard v. State,* 599 S.W.2d 597 (Tex.Cr.App.1979); *De Lao v. State,* 550 S.W.2d 289 (Tex.Cr.App.1977); *Duncan v. State,* 549 S.W.2d 730 (Tex.Cr.App.1977); *Thomas v. State,* 572 S.W.2d 507 (Tex.Cr.App.1976); *Kolb v. State,* 532 S.W.2d 87 (Tex.Cr.App.1976); *Nicholas v. State,* 502 S.W.2d 169 (Tex.Cr.App.1973). *McGlynn* and the other cases have held that the "plain view" exception does not apply because it was not immediately apparent to the seizing officer that the container contained incriminating evidence.[6] The validity of the holdings in these cases was, we believe, seriously eroded by the recent opinion of the United States Supreme Court in *Texas v. Brown,* —— U.S. ——, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), wherein a plurality of the Court reconsidered the plain view doctrine first addressed in *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), and expounded upon

---

**3.** *Cf. McVea v. State,* 635 S.W.2d 429 (Tex.App.—San Antonio 1982, pet. ref'd).

**4.** Subsequently identified as a nail file and a thin metal spatula.

**5.** 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

**6.** In *De Lao v. State, supra,* the Court of Criminal Appeals held that the seizing officer had to *know* that incriminating evidence was before him when he seized the container.

the requirements for its invocation by law enforcement officers.

In disapproving of our Court of Criminal Appeals' application of the doctrine (also referred to as an exception or an extension of prior justification) in *Brown v. State,* 617 S.W.2d 196 (Tex.Cr.App.1981) and indirectly of the holdings in *Howard v. State, supra; De Lao v. State, supra; Duncan v. State, supra; Thomas v. State, supra;* and *Nicholas v. State, supra,* the Court reinterpreted the phrase "immediately apparent" to mean not an unduly high degree of certainty as to the incriminating character of the evidence, but rather that there is probable cause to associate the property with criminal activity.

■ The test is the same as announced in *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980),

> Probable cause ... merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief, *Carroll v. United States,* 267 U.S. 132, 162 [45 S.Ct. 280, 288, 69 L.Ed. 543] (1925), that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A 'practical nontechnical' probability that incriminating evidence is involved is all that is required.

Applying that test to the instant case we hold that officer Stillwagon was in possession of facts which would warrant a man of reasonable caution to believe that the items contained in the purse, including the bottle with a plastic bag in it, the spoons and syringes, were items associated with narcotic contraband and paraphernalia. Indeed, Stillwagon testified that his training indicated the find to be consistent with heroin use. The fact that the substance turned out to be methamphetamine instead of heroin, we think, is immaterial since the test merely requires that there be probable cause to associate the property with crimi-

nal activity and not that the belief turn out to be precisely correct. Appellant's third ground of error is overruled.

■ Appellant next complains of the trial court's failure to suppress the physical evidence seized from the blue duffel bag because the impoundment of the car was founded upon an arrest based upon evidence seized during the prior illegal warrantless search of the purse. All of the items seized from the blue duffel bag admitted into evidence were described by State witnesses as potential narcotics paraphernalia. We again reject appellant's contention that the initial search of the purse was illegal and that the subsequent inventory search was tainted thereby.

■ The constitutional validity of inventory searches was recognized by the U.S. Supreme Court in *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). Under *Opperman,* a search is reasonable if conducted in accordance with standardized police procedures. *See also Daniels v. State,* 600 S.W.2d 813 (Tex.Cr. App.1980); *Benavides v. State,* 600 S.W.2d 809 (Tex.Cr.App.1980).

Officer Stillwagon testified to conducting the inventory search as per established departmental policy. The testimony of Stillwagon brought the inventory search squarely within the holding in *Opperman.* We think, however, that Stillwagon was further justified in believing that additional contraband was in the car and that he was not precluded from examining the closed duffel bag. *See United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). Appellant's fourth ground of error is overruled.

By his fifth ground of error appellant alleges that the inventory search complained of in the preceding contention exceeded the permissible scope of a proper inventory search. Argument is made that no necessity was shown for the opening and searching of the duffel bag. Appellant submits that the three legitimate purposes [7] to

---

7. "(1) The protection of the owner's property while it remains in police custody; (2) the protection of the police against claims or disputes over lost or stolen property; and (3) the protec-

be served by an inventory search could have been adequately served by inventorying the duffel bag as a unit, rather than item by item.

We cannot concern ourselves with what might have been the better procedure. Instead we must focus upon the legality of those procedures which did occur and their effect upon the rights of appellant. A true inventory search of an automobile occurs outside the legal concepts of probable cause or search incident to a lawful arrest. Its existence rests upon the caretaking responsibility that a police officer has toward a lawfully impounded automobile. Such caretaking responsibility was clearly established by the testimony of Stillwagon describing departmental policy.

In any event, the items recovered from the duffel bag were for the most part duplicative of other paraphernalia already admissible by virtue of the search of the purse. The items complained of resulting from the search of the duffel bag were not necessary for the conviction and were cumulative in nature. We fail to see how admission of these items subjected appellant to any harm. We are further aware of the recent holding in *United States v. Ross, supra,* in which the court stated:

> When a legitimate search is underway, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand.

In the instant case the scope of the warrantless search of appellant's automobile was not defined by the type of container in which that evidence was secreted but rather by the object of the search and the place in which probable cause existed to believe that contraband would be found. Appellant's fifth ground of error is overruled.

tion of the police from potential danger." *South Dakota v. Opperman,* 428 U.S. 364, 369, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *see also*

In his sixth ground of error appellant contends that the trial court erred in instructing the jury on the law of parties over his timely objection because the instruction permitted a conviction on a theory not supported by the evidence. Argument is made that there is no evidence in the record to support the submission of the instruction.

Even though an indictment does not allege an accused's responsibility as a party, the court may charge the jury on the law of parties if the evidence supports the party theory. *Ellett v. State,* 607 S.W.2d 545 (Tex.Cr.App.1980); *Pitts v. State,* 569 S.W.2d 898 (Tex.Cr.App.1978).

Appellant claims that the evidence shows only that he was present at the scene of the offense. The State admits that mere presence at the scene of the crime is insufficient to support a charge on the law of parties. *Alexander v. State,* 607 S.W.2d 551 (Tex.Cr.App.1980); *Torres v. State,* 491 S.W.2d 126 (Tex.Cr.App.1973). Presence at the scene of the offense is, however, a fact which can be considered in determining whether a charge on the law of parties is warranted. *Keller v. State,* 606 S.W.2d 931 (Tex.Cr.App.1980); *Ortiz v. State,* 577 S.W.2d 246 (Tex.Cr.App.1979). In addition the events transpiring before, during and after the commission of an offense may also be looked at. *Medellin v. State,* 617 S.W.2d 229 (Tex.Cr.App.1981); *Tarpley v. State,* 565 S.W.2d 525 (Tex.Cr.App.1978).

Whether an individual is acting as a party to an offense may be inferred from circumstantial evidence and need not be proven through direct evidence. Circumstantial evidence alone can be sufficient to warrant the giving of a charge on the law of parties. *Morrison v. State,* 608 S.W.2d 233 (Tex.Cr.App.1980); *Wygal v. State,* 555 S.W.2d 465 (Tex.Cr.App.1977). A circumstantial evidence charge was given the jury and appellant's conviction, therefore, rests upon circumstantial evidence.

*Gill v. State,* 625 S.W.2d 307 (Tex.Cr.App. 1980).

The record must, therefore, demonstrate that appellant acted with the intent to promote or assist in the commission of the offense by soliciting, encouraging, directing, aiding, or attempting to aid the other person in its commission. Tex.Penal Code Ann. § 7.02(a)(2). The facts must establish appellant's guilt beyond a reasonable doubt and must exclude to a moral certainty, every other reasonable hypothesis, except appellant's guilt.

We believe appellant's conviction is supported by legally sufficient circumstantial evidence. At the time of the arrest, appellant and Riggs were the only two individuals in the immediate vicinity. The automobile in which the contraband was discovered had only been in that location for a matter of minutes when first observed by officer Stillwagon. The driver of the car was not in the car and the only other person around was appellant. When appellant was returned to the vehicle he and Riggs carried on a conversation indicating that they knew each other. The automobile contained a variety of narcotic paraphernalia readily adaptable for the injection of controlled substances, some within view and easy reach. The paraphernalia consisted of items in pairs indicating possible use by two persons. Appellant was in possession of marihuana at the time of his arrest. Appellant correctly points out in his brief that some of appellant's personal papers were contained in the duffel bag which also contained a small quantity of methamphetamine and paraphernalia. We hold this evidence sufficient to warrant the submission of a charge on the law of parties and to support the jury verdict under that theory. Appellant's sixth ground of error is overruled.

In his seventh and final ground of error appellant contends that the evidence was devoid of any "affirmative link" between him and the contraband discovered in containers inside the automobile and was, therefore, insufficient to support his conviction for possession of methamphetamine. For the reasons heretofore stated we reject appellant's challenge.

To establish unlawful possession of a controlled substance, the State must prove that the accused exercised care, custody, control, or management over the contraband and that the accused knew the matter possessed was contraband. *Dubry v. State*, 582 S.W.2d 841 (Tex.Cr.App.1979). Whether the theory of prosecution is sole or joint possession, the evidence must affirmatively link the accused to the contraband in such a manner and to such an extent that a reasonable inference may arise that the accused knew of the contraband's existence and that he exercised control over it. *Waldon v. State*, 579 S.W.2d 499 (Tex.Cr.App. 1979).

This affirmative link is established by showing additional facts and circumstances which indicate the accused's knowledge and control of the contraband. *Harrison v. State*, 555 S.W.2d 736 (Tex.Cr.App. 1977).

We find it unnecessary to again recite the facts establishing the necessary "affirmative link" but we think our disposition of appellant's sixth ground of error equally disposes of his seventh ground of error. Appellant's final ground of error is overruled. The judgment of conviction is affirmed.